FRANK CIHAK

*v.*

HYNEK KLEKR *et al.*

*Filed at Ottawa May 15, 1886.*

1. EASEMENT—*when appurtenant to an estate—of an alley way—right of purchaser.* Where the owner of two tenements, or of an entire estate, has so arranged and adapted them that one tenement or one portion of the estate derives a benefit and advantage from the other, of a permanent, open and visible character, and he sells a portion of the property, the purchaser will take the tenement or portion sold with all the benefits and burdens which so appear at the time of the sale to belong to it. It is not necessary, in such case, that the easement claimed by the grantee must be really necessary for the enjoyment of the estate granted. It is sufficient if it is highly convenient and beneficial therefor.

2. In this case, the agent of the owner of three lots (19, 20 and 21,) lying parallel to each other and adjoining, for convenience in leasing, made a plat of lots 20 and 21, dividing them transversely into four lots, leaving an alley ten feet wide off the ends of such lots next to lot 19, which accommodated that lot as well as the other four of the subdivision, and was highly convenient and beneficial to lot 19. The agent, in negotiating for the sale of the half of lot 19 next to the alley, exhibited to the purchaser a plat showing such alley, acknowledged by the lot owner, and promised to have the same recorded, and the sale was closed by the purchaser on the assurance and belief that such alley was an easement to his lot, and the owner, in making sales and conveyances of the other lots, sold with reference to such plat, and reserved off the end of each of the four lots ten feet next to lot 19, and finally put such plat on record, on which the alley was marked, "reserved for private alley:" *Held,* that such alley became and was an easement appurtenant to lot 19, which could not be destroyed by the owners of the other lots without the concurrence of the purchaser of lot 19. In such case, the subsequent sale of lots by such plat, reserving the alley, implied knowledge by the owner of the same, and was evidence tending to show his adoption and confirmation of the subdivision.

3. SAME—*proof of the owner's intention, in establishing an alley.* Where it becomes material to show a party's intention in regard to the object and purpose of an alley between his lots, it is not competent to prove, by a witness, that the intention of the owner was to reserve the alley for lots on one side thereof only. It is not competent for a witness to testify to another's intention. All that is proper in such case, is, to testify to acts and declarations, as showing intention, when the question is, what others dealing with the property had reason to believe was the intention, from the circumstances, and acts done.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Plaintiff in error, Frank Cihak, filed his amended bill June 5, 1884, to enjoin the defendants in error from closing up or obstructing an alley running the entire length of his lot and in the rear of the lots of the defendants.

In 1859, one Wilder, of Chicago, was the owner of lots 19, 20 and 21, each having a frontage of fifty feet on De Koven street, in block 35, in school section addition to Chicago. At that time the land was occupied by squatters, and Wilder

employed one John Gunzenhauser, as his agent, to dispossess the occupants, and rent the property. Gunzenhauser removed the squatters, and subdivided the lots according to a private plat made by himself, as follows:

## DE KOVEN STREET.

| 50 | 50 | 51.4 | | |
|---|---|---|---|---|
| 19 | 10<br><br>ALLEY IN QUESTION.<br><br>20<br><br>10 | 21 | 25<br>25<br>25<br>25 | JEFFERSON STREET. |

PUBLIC ALLEY.     15 ft.

The east two lots (20 and 21) were subdivided into four lots, fronting on Jefferson street, and the west lot (19) on DeKoven street, he divided into two lots, on DeKoven street. Wilder afterwards sold all the lots to Henry G. Hubbard, of Middletown, Connecticut, who remained owner for eighteen or twenty years. About 1878, Henry G. Hubbard sold all of the lots to Mrs. E. K. Hubbard, (Anna J. Hubbard,) as lots 19, 20 and 21. Gunzenhauser sold the lots, as subdivided, for Mrs. E. K. Hubbard, the then owner. He acted as the real estate broker in the sale of all the lots which were sold to the plaintiff and defendants in error. He advertised them for sale, and the deeds and other papers were drawn in his

office. With the exception of an interval of one or two years, Gunzenhauser was the agent, having charge and control of the whole property, paying taxes, collecting rents, etc., from 1859 down to the time all the lots were sold.

In July, 1882, the plaintiff in error, Cihak, began his negotiations with Gunzenhauser for the purchase of the east half of lot 19. He employed one Kaspar, a real estate dealer, as his agent in the matter. Kaspar went to Gunzenhauser, told him he wished to purchase the lot on the alley for Cihak, and the other or west half for Mrs. Bain. Upon examination of the abstract of title which had been given him for that purpose, Kaspar did not find any plat of record showing this alley. He and Cihak reported this fact to Gunzenhauser, who said, "That is all right—I have a plat here," and he showed Kaspar the plat, saying it was going to be put on record. He further showed them that the plat was acknowledged, and said he was going to sell the other lots subject to this plat, and the alley as it was being platted out. At that time, Mrs. E. K. Hubbard owned the entire lots 19, 20 and 21, no part of them having been sold. Kaspar told Gunzenhauser that Cihak would not buy unless the plat was put on record, and Gunzenhauser promised to do that. Thereupon Cihak bought the east half of lot 19. He testified he would not have purchased the lot if there had been no alley along the east line, and if Gunzenhauser had not promised to record the plat. A warranty deed was made by the owner, Mrs. E. K. Hubbard, (Anna J. Hubbard,) and Elijah K. Hubbard, her husband, to the plaintiff in error, Frank Cihak, conveying the east half of said lot 19, in block 35, school section addition to Chicago, "together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining." The deed was dated July 15, 1882, acknowledged August 30, 1882, and not delivered until September 7, 1882. The plat shown Cihak and Kaspar by

Gunzenhauser, and which was afterward recorded, as promised, is as follows:

"STATE OF ILLINOIS, } ss.
   *Cook County.* }

"I, Samuel S. Greeley, do hereby certify that I have surveyed lots 20 and 21, in block 35, of school section addition to Chicago, and that I have subdivided the same into four lots and a private alley, all of which are correctly represented upon the plat hereon drawn.

Chicago, July 28, 1882.

SAMUEL S. GREELEY, *Surveyor.*"

"CHICAGO, *August 11, 1882.*

"This is to certify that the above subdivision and plat were made by my direction.    ANNA J. HUBBARD."

The plat was acknowledged, in statutory form, by said Anna J. Hubbard, August 11, 1882, and recorded September 19, 1882.

The east half of lot 19 abutted on the west line of the alley. The alley which Gunzenhauser laid out in 1859, and for which he then originally drove the stakes, is the same as the private alley shown on the recorded plat, running north and south along the entire east line of lot 19, now owned by Cihak. Some time after Cihak purchased, all of the defendants in error purchased their lots from the same agent, Gunzenhauser. and received warranty deeds from the same grantors, Anna J. Hubbard and E. K. Hubbard, her husband.

The deed to Hynek Klekr and Anna Klekr, two of the defendants in error, bears date August 8, 1882, was acknowledged September 8, 1882, and recorded November 21, 1882. The record shows it was delivered some days after Cihak's deed was delivered. The deed conveys "lot 1, in the subdivision of lots 20 and 21, in block 35, school section addition to Chicago, reserving, however, the use of the west ten feet of said lot for a private alley." The deed to Joseph Kyasnicka, another of the defendants in error, bears date August 3, 1882, was acknowledged September 8, 1882, and recorded September 19, 1882. It conveys lot 2, in the same subdivision, and with the same reservation. The deed to Jaroslay Lenoch, another of the defendants in error, bears date February 1, 1884, was acknowledged February 8, 1884, and recorded February 12, 1884. It conveys lots 3 and 4, in the same subdivision.

Upon the east half of lot 19, long before Cihak purchased, there was a cottage, covering the width thereof on the De Koven street front of the lot, having a door leading into the alley, and a window facing it, and the alley was used as a means of ingress and egress to and from the building, and for receiving coal and wood. Such was the condition at the time Cihak purchased, and he soon after moved the cottage to the rear

of the lot, and on the front facing De Koven street he erected a substantial three-story brick building, leaving a space of yard between the cottage and brick building: Both buildings stand on the line of the alley, and have windows facing it. The use of the alley always was and is necessary to afford means of ingress and egress to and from the yard. The occupant of the cottage is a milk dealer, and uses the yard for his horses and wagon. An instrument in writing, purporting to vacate the alley, was executed and acknowledged by four of the defendants in error, the owners of lots 1, 2, 3 and 4, on February 12, 1884, and, acting thereon, they attempted and proceeded to move some buildings on the alley, and thereupon the present bill was filed. This is a general outline of the facts.

Upon final hearing, on proofs taken, the circuit court dismissed the bill. On appeal to the Appellate Court for the First District the decree was affirmed, and the complainant brings this writ of error.

Messrs. KRAUS, MAYER & BRACKETT, for the plaintiff in error:

The evidence establishes the fact that Cihak has an easement in the alley, which can not be destroyed without his concurrence.

A dedication is a voluntary appropriation of an estate to the public, which may be done by writing, by parol, by declarations, or by acts *in pais*, and inferred from acquiescence in the public use of it. Angell on Highways, 135; *Smith* v. *Flora*, 64 Ill. 93; *Godfrey* v. *Alton*, 12 id. 29; *Wilson* v. *Saxon*, 27 Iowa, 15; *Harding* v. *Jasper*, 12 Cal. 642; *Green* v. *Chelsea*, 24 Pick. 71; *Dodge* v. *Stacy*, 39 Vt. 574; *Child* v. *Chappell*, 9 N. Y. 256.

There is no fixed time required in order to make a dedication effectual. *Alvord* v. *Ashley*, 17 Ill. 363; *Reese* v. *Chicago*, 58 id. 322; *Fisher* v. *Beard*, 32 Iowa; 346.

The questions asking for the intentions of Mrs. Hubbard in respect to the alley, were improper. *Cook* v. *Whiting*, 16 Ill. 483; *Miller* v. *Washburn*, 117 Mass. 371; *Diedrich* v. *Railway Co.* 42 Wis. 248; *Preston* v. *City of Nevada*, 34 Texas, 684; Washburn on Easements, (5th ed.) 75.

Relying upon the plat showing the alley, plaintiff in error bought the east half of lot 19, by express reference to it. *Waugh* v. *Leach*, 28 Ill. 488; *Jacksonville* v. *Railroad Co.* 67 id. 540; *Railroad Co.* v. *Hartley*, 67 id. 539; *Gridley* v. *Hopkins*, 84 id. 528; *Gebhart* v. *Reeves*, 75 id. 301; *Smith* v. *Heath*, 102 id. 130; *Gosselin* v. *Chicago*, 103 id. 623; *Kuecken* v. *Voltz*, 110 id. 264.

The rights created by the plat must be ascertained exclusively from the plat, and can not be enlarged or diminished by the parol construction of those who made it. *Diedrich* v. *Railway Co. supra; Preston* v. *City of Nevada, supra.*

The sale of a house fronting on an open strip of land belonging to the vendor, makes that strip of land a highway. *Woodyer* v. *Hadden*, 5 Taunt. 137.

When the owner of two heritages, or of one consisting of several parts, has arranged and adapted them so that one derives a benefit and advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect of the other, there is, in the silence of the parties, an implied understanding and agreement that these advantages and burdens shall continue as before the separation of title. *Morrison* v. *King*, 62 Ill. 30; *Ingalls* v. *Plamondon*, 75 id. 118; *Hadden* v. *Shoutz*, 15 id. 581; *Gerber* v. *Grabel*, 16 id. 223; *Thomas* v. *Wiggers*, 41 id. 471; Washburn on Easements, *50.

An easement, however, in order to pass by a severance of the heritages, need not be a physical necessity, it being sufficient if it is "highly convenient and beneficial therefor." Goddard on Easements, 122; Washburn on Easements, 95;

*Railroad Co.* v. *Jones,* 50 Pa. St. 417; *McCarthy* v. *Kitchenman,* 47 id. 239; *Jones* v. *Jenkins,* 34 Md. 1.

Messrs. BLUM & BLUM, for the defendants in error:

Gunzenhauser had no authority to make a private plat, or subdivide lots 20 and 21, and his act could not bind the owner.    *Gentleman* v. *Soule,* 32 Ill. 272; *Chicago* v. *Johnson,* 98 id. 618.

A primary condition of every valid dedication is, that it shall be made by the owner of the fee.    *Baugan* v. *Mann,* 59 Ill. 494; *Harding* v. *Town of Hale,* 83 id. 506; *Gridley* v. *Hopkins,* 84 id. 530.

It is only such a right as is necessary to the enjoyment of the estate granted, that will pass as an easement or an appurtenance.    *Turnbull* v. *Rivers,* 3 McCord, (S. C.) 89; *McDonald* v. *Lindall,* 3 Rawl. 495; *Seeley* v. *Bishop,* 19 Conn. 134; *Lawton* v. *Rivers,* 2 McCord, 264; *Randall* v. *McLaughlin,* 10 Allen, 366; *Carbury* v. *Willis,* 7 id. 370; *Johnson* v. *Jordan,* 2 Metc. 234; *Philbrick* v. *Ewing,* 97 Mass. 133; *Gayetty* v. *Bethune,* 14 Pick. 51; *Screvin* v. *Gregorie,* 8 Rich. 163; *Ponfret* v. *Ricroft,* 1 Saund. 323; *Collins* v. *Prentice,* 15 Conn. 38; *Pierce* v. *Sellick,* 18 id. 321; *Warren* v *Blake,* 54 Maine, 276.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

We are of opinion that upon the facts of this case, Cihak, the plaintiff in error, has an easement in the alley in question, which can not be destroyed without his concurrence. We would have no doubt in the matter had Mrs. Hubbard, the grantor of Cihak, been the actor in the sale to him, and in the previous management of the entire property, instead of Gunzenhauser.    The proof establishes, to our satisfaction, that in 1859 Gunzenhauser, as agent, took charge of the three lots, 19, 20 and 21, fronting on DeKoven street, to care for,

lease them, and collect the rents; that for the more advan-
tageous leasing of the lots and deriving the most rental, he
subdivided them, making of lots 20 and 21 four lots, fronting
on Jefferson street, and dividing lot 19 into two lots, fronting
on De Koven street. He made the four lots on Jefferson
street ninety feet in depth, and an alley ten feet wide, the
alley running from north to south along the entire east line
of lot 19, and taking off the west ten feet of the east two lots,
thus forming an alley between the east half of lot 19 on the
west, and the four lots on the east; that he drove the stakes
for the alley; that he made written leases of the lots, accord-
ing to this subdivision, leasing the four lots as only ninety
feet deep; that in 1859 he leased the east half of lot 19, and
the tenant in that year put up a fence on the west line of the
alley, and as the four lots east of the alley were leased, the
tenant would put a fence on the west end of his lot adjoining
the alley, so that by about 1864 all the four lots east of the
alley were leased and occupied, and there was either a fence
or shed and barn along the entire east line of the alley, and
from that time until 1882, with the alley thus open and de-
fined, all the lots were under lease in the manner stated.
This establishment of the alley was not only for the use and
benefit of the lots from which it was taken, on the east of it,
but it was as well for the use and benefit of the east half of
lot 19, which adjoined it its whole length on the west. This
alley was a manifest advantage to the east half of lot 19, and
must have enhanced its rental value. There was a building
on the east half of lot 19, fronting on De Koven street, with
its side on the line of the alley, with a window in it, and a
door leading into the alley. The alley was actually being
used for the delivery of coal and wood for the house, and was
the only means of access to the house used for such purpose.
If all this had been with the knowledge and procurement of
the owner, and she had personally sold the east half of lot 19,
the case would seem to be brought within the principle,

that when the owner of two tenements, or of an entire estate, has arranged and adapted these so that one tenement, or one portion of the estate, derives a benefit and advantage from the other, of a permanent, open and visible character, and he sells the same, a purchaser takes the tenement, or portion sold, with all the benefits and burdens which so appear at the time of the sale to belong to it. *Morrison* v. *King*, 62 Ill. 34; *Ingalls* v. *Plamondon*, 75 id. 118; *Jones* v. *Jenkins*, 34 Md. 1; *Huttemier* v. *Albro*, 18 N. Y. 50; *Lampman* v. *Milks*, 21 id. 507; *Dunklee* v. *Wilton Railroad Co.* 24 N. H. 489; *Kieffer* v. *Imhoff*, 26 Pa. St. 438; *Cannon* v. *Boyd*, 73 id. 179; *Seymour* v. *Lewis*, 2 Beas. (N. J.) 439.

We do not concur in the view of counsel for defendants in error, that the easement to be claimed by the grantee in such a case must be really necessary for the enjoyment of the estate granted. Mr. Bennett, in his edition of Goddard on Easements, page 122, in speaking on this subject of grants of *quasi* easements, upon the conveyance of one of two lots, says: "The third class of cases is where the *quasi* easement claimed by the grantee is not really 'necessary' for the enjoyment of the estate granted, but is highly convenient and beneficial therefor; and here the modern rule in America is, that if such easement is 'continuous and apparent' at the time of the grant, it passes to the purchaser with his estate, otherwise not." And in Washburn on Easements, (3d ed.) 95, in the discussing of this question the author says: "It (the easement) must be reasonably necessary to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reservation in the deed, to create an easement in favor of one part of a heritage over another." There can be no doubt, here, that the alley was highly convenient and beneficial for the enjoyment of the estate granted to Cihak.

Gunzenhauser would appear to have made the subdivision he did, of his own motion. Wilder was the owner at the

time, and lived in Chicago. All that goes to connect him with the subdivision, is Gunzenhauser's statement that Wilder was on the ground several times; helped him to get off the squatters; "made no objections to my letting out the land in that way, and was perfectly satisfied." While Henry G. Hubbard owned the property, he lived in Connecticut, and is not shown to have had any personal knowledge of the subdivision; and the same with Mrs. E. K. Hubbard. We understand she, too, resided in Connecticut. E. K. Hubbard, her husband, testifies that he resided in Chicago from 1835 to 1885; that he had authority from his wife to act on her behalf; says, he thinks his wife had seen the lots; that he saw them after his wife became owner, perhaps once a month; that he did not recollect consulting with any one regarding the subdivision platted and recorded, except, perhaps, Gunzenhauser. And here the inquiry is suggested, why this plat of the subdivision which was made and recorded at the instance of E. K. Hubbard, and, as Mrs. Hubbard acknowledges, by her direction, comes to correspond precisely with the subdivision which Gunzenhauser made in 1859, and has the same alley of just ten feet wide, exactly as Gunzenhauser staked it out in 1859. It implies knowledge by Mrs. Hubbard of the subdivision, and is evidence tending to show her adoption and confirmation of that subdivision, and of what was done under it.

But without further pursuing this branch of the case, or expressing an opinion whether the circumstances of the arrangement and use of the alley for the accommodation of this lot of Cihak, and selling the lot with the apparent appurtenance of the alley attached to it, were alone sufficient to give the grantee of the lot the use of the alley, we come to the conclusion that they were sufficient, when taken in connection with the subsequent sales being made subject to the alley. Defendants in error never bought or paid for the alley, or so supposed. In the deeds for lots 1 and 2, the use of the west ten feet of the lots for a private alley was ex-

pressly reserved. And at the time the deed for lots 3 and 4 was made, there was, upon record, the plat of the subdivision, showing the alley upon it. True, it is named "private alley," and it is insisted by counsel for defendants in error that this means private to the lots from which the alley was taken,— those on the east side of it,—and that it was for their use only. Under other circumstances,—of Mrs. Hubbard not being the owner of the ground on the west side of the alley,—this might be so. But was it so under the circumstances here? The alley had originally been laid out many years before, for the accommodation of Cihak's lot, as well as the other lots, and had ever afterward been used equally for the accommodation of Cihak's and the other lots. At the time Mrs. Hubbard put the designation "private alley" on the plat, the alley was being so used, and she was the owner of the ground on both sides of the alley, with a building standing on the west line of the alley, constructed with special adaptation for the use of the alley. The alley was important for the beneficial enjoyment of her lot on the west side of the alley, and must have enhanced its value. There was no apparent purpose why the alley should not be as much for the use of the owner's ground on the one side of the alley as on the other side.

Under such circumstances, we think the meaning of private was, that the alley was private to the owner's own ground; that the alley was for the use of the owner's lots only, but of her lots abutting on both sides of the alley, and not for the use, solely, of her lots on one side of the alley. We give no consideration to the manifestly incompetent testimony of E. K. Hubbard, that his wife's intention was to reserve the alley as a private alley for the use of lots 1, 2, 3 and 4. It was not competent for him to swear to his wife's, or any one's else, intention. All that he might do in such regard, would be to testify to acts and declarations, as showing intention. The question here is, what others had reason to believe was the intention from the circumstances, and the acts done. The

alley was an important consideration with Cihak when he purchased. An inspection of the abstract of title did not show the alley of record. This defect was brought to the attention of Gunzenhauser, and to assure Cihak that he would get with his lot the use of the alley, the plat of the subdivision, with the alley appearing upon it, acknowledged by Mrs. Hubbard, was shown by Gunzenhauser to Cihak, the former stating that the plat was going to be put upon record. This satisfied Cihak that he would get the benefit of the alley. Gunzenhauser, who made the sale, Kaspar, who acted for Cihak, and Cihak, no doubt, all believed that the recording of the plat of the subdivision would secure for Cihak the use of the alley. It did not occur to either of them that the word "private" had any significance as excluding such use. To so construe that word would be to make it but a snare to entrap the one purchasing the lot on the west side of the alley. It would be to give to defendants in error ground which they never purchased, and to rob plaintiff in error of an alley the use of which he had good reason to believe he purchased as an appurtenance to his lot.

We find enough in the facts of this case to have put the defendants on inquiry, so as to have affected them with notice of the circumstances upon which we rest the right of the complainant to the use of this alley.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause remanded to the circuit court for further proceedings in conformity with this opinion.

*Judgment reversed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.