ANNE H. MARTIN

*v.*

JAMES K. MURPHY *et al.*

*Opinion filed June 14, 1906.*

EASEMENTS—*what creates an easement of passage.* Where the owner of several lots having no alley at the rear builds a walk making a·passageway from the inside lot across the others, upon the conveyance, by such owner, of one of the lots without reference to the passageway across it being made in the deed, an easement of passage becomes at once appurtenant to the other lots if the marks of the burden be open and visible, and passes with such lots whether mentioned in· the deeds of conveyance or not, and each subsequent purchaser takes subject to the easement in favor of the other lots, as it is apparent from an inspection of the premises at the time of the purchase.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding. .

HENRY RUSSELL PLATT, for appellant.

PECKHAM, SMITH, PACKARD & APMADOC, for appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion .of the court:

. The appellant, Anne H. Martin, is the owner of lot 1 in a certain subdivision made by Lucy E. Briggs, at the south-west corner of Michigan avenue and Twenty-fifth· street, in the city of Chicago. This lot has an east frontage ·of 16.68 feet on Michigan avenue and is bounded on the, north by Twenty-fifth street. Appellee James K. Murphy is the owner of lot 2 in the same subdivision. It lies immediately south of lot 1 and has an east frontage of 16.66 feet on· Michigan avenue. Appellee Hal S. Thompson is the owner of lot 3 in the subdivision. This lot adjoins lot 2 on the south and has ·the same frontage on Michigan avenue.

A two-story and basement brick house is situated on each of these lots and covers the full width of the lot, the three houses together presenting a continuous front on Michigan avenue. All of these houses were erected by Lucy E. Briggs in 1874, when she was the owner of the three lots. From that time until shortly before the commencement of this suit the occupants of lots 2 and 3, and persons dealing with them, had been accustomed to pass over the extreme rear or west end of lot 1 in removing ashes and garbage from the rear of lots 2 and 3 to Twenty-fifth street, and in receiving provisions, fuel, etc., into the rear of the houses on those lots from Twenty-fifth street, there being no access to Michigan avenue except through the front entrances of the houses and no public alley or highway touching the rear of these premises.

The bill of complaint in this case was filed in the superior court of Cook county on March 26, 1903, by the two appellees against appellant. By it an easement is claimed over the west end of lot 1 for the benefit of lots 2 and 3. The bill alleges, that appellant has placed a permanent obstruction across the right of way and refuses to allow complainants and their servants and agents to enter upon the rear of lot 1. The prayer is that complainants may be quieted in their right to the enjoyment of said right of way, and that they, and each of them, may be decreed to have the right to use and enjoy the right of way; that a decree may be entered directing the defendants to take down and remove all obstructions existing in said right of way, and that said defendant may be forever enjoined from interfering with the use and enjoyment thereof by the complainants for the purposes for which it has been heretofore used. The cause was heard by the master upon bill, answer and replication, and a report was made by him to the court, finding certain facts and conclusions and recommending that a decree be entered granting the relief sought by the bill. Objections to this report were overruled by the master, and

when renewed as exceptions in the superior court were again overruled, and a decree was entered awarding the relief prayed for by appellees in their bill. Appellant appealed to the Appellate Court for the First District. One of the judges of that court took no part in the consideration of the cause. The remaining two judges were unable to agree, and the decree of the superior court was accordingly affirmed by operation of law. Appellant has prosecuted a further appeal to this court, and here complains of the finding of the superior court that an easement exists over the rear of lot 1 for the benefit of lots 2 and 3.

Lot 4 of the subdivision made by Lucy E. Briggs lies immediately west of the three lots above mentioned, and its east line coincides with the west line of those lots. The relative position of these four lots is shown by the following diagram:

The superior court found, and recited in its decree, that in 1874 Lucy E. Briggs was the owner of lots 1, 2, 3 and 4, and at that time erected on lots 1, 2 and 3 three brick dwelling houses occupying the entire width of said lots, fronting on Michigan avenue, and at the same time on lot 4, fronting on Twenty-fifth street, a brick residence building with its

easterly wall on the boundary line between lot 4 and the rear of lots 1, 2 and 3; that in separating lots 1, 2 and 3 from each other she constructed fences upon the dividing line between lots, extending from the rear of the houses to a point about four feet east of the rear line of these three lots, and that she constructed a north and south fence across the rear of these lots, four feet east of the easterly wall of the brick building on lot 4, extending from the south line of lot 3 to Twenty-fifth street; that this left an alley or passageway from Twenty-fifth street across the rear of lot 1 to lot 2 and across lot 2 to lot 3; that gates were placed in this north and south fence, leading from the rear of lots 2 and 3 into this passageway; that at the north entrance of the alleyway a gate or door was constructed leading out upon Twenty-fifth street; that this gate or door was not at Twenty-fifth street, but south of it as far as the front of the house on lot 4; that for some time after this alley or passageway was laid out it contained a plank walk, and at a later period a cement walk was laid across the rear of lot 1 from Twenty-fifth street to the passageway; that many years ago gates swinging across this passageway on the division lines between lots 1 and 2 and lots 2 and 3 were constructed, where they have since continued; that this alleyway remained in this condition from 1874 until some time between 1887 and 1890, when complainant Murphy, being then the owner of lot 2, removed as much of the north and south fence as extended across lot 2, without interfering with the use of said passageway; that about 1890 one William K. Reed, whose wife then owned lot 3, erected upon the rear of said lot an addition extending so far back that it led to the removal of that portion of said fence which crossed lot 3, without interfering with the use of said passageway; that the fence crossing lot 1 was changed, and that there is now no north and south fence across that lot and has not been for some years, but that it does not appear just when the changes were made, except that no fence has been there since the defend-

ant Martin constructed a building in the rear of lot 1, which extends west to within two and one-half feet of the west line of lot 1; that the gates across the passageway, above mentioned, have at times been kept bolted or locked at night but have not been kept locked during the daytime, and the locks upon the gates have not interfered with the use of said alley or passageway; that this alleyway, with its width of about four feet, was continually used in getting to and from lots 2 and 3 by the occupants thereof, their servants, and others who had occasion to leave said premises from the rear, without any objection on the part of anyone and without asking and obtaining any expressed permission from anyone, for the purpose of removing ashes, garbage, etc., and by the grocerymen trading with the occupants of said premises, from the time this alleyway was laid out by Lucy E. Briggs until that portion of it across the rear of lot 1 was narrowed to about two and one-half feet by the defendant in 1894, at which time there was a temporary obstruction of the alleyway not continued to exceed two weeks, and thus narrowed this alley or passageway was thereafter continued and used as theretofore until shortly prior to the beginning of this suit, when the defendant Martin closed it permanently; that since 1874, except during the temporary obstruction referred to, the use of this alleyway has been open and continuous; that the marks of the alleyway have been apparent, and that when the defendant Martin purchased lot 1 she knew of the existence of this alley or passageway over the rear part thereof, and of its uses; that after Lucy E. Briggs had built the houses and fences above described she parted with the title to the said lots at different times, and that by a series of *mesne* conveyances the complainant Murphy in 1880 became the owner of lot 2, the complainant Thompson now owns lot 3, and the defendant Anne H. Martin has owned lot 1 since 1894; that the defendant Martin, shortly before the filing of the bill in this cause, attempted to and did permanently close the entrance to said

alley or passageway at the line between lots 1 and 2, thus denying to the complainants the right to the use thereof; that there is no passageway between the houses on lots 1, 2 and 3 to Michigan avenue, and that this alley or passageway leading from the rear of lots 2 and 3 to Twenty-fifth street is the only means of access from the rear of said premises to said street, and is highly convenient and reasonably necessary to the enjoyment of lots 2 and 3 by the occupants thereof.

The recital of facts in the decree which are above set out substantially follows the finding of facts contained in the report of the master before whom this cause was heard. We have read the testimony of the several witnesses who testified in the case, and are of the opinion that the evidence fully warrants the conclusion reached by the master and the superior court as to the facts in the case.

Appellant contends, however, that these facts do not establish an easement across lot 1 for the benefit of lots 2 and 3, because it does not appear therefrom that the user of the passageway over lot 1 by the owners and occupants of lots 2 and 3 was adverse and under claim of right. The relief in this case was not granted on the theory that an easement by prescription was established by the evidence. The decree is based on the findings that while Lucy E. Briggs was the owner of these three lots she laid out a passageway leading from the rear of lots 2 and 3 across the rear of lot 1 to Twenty-fifth street, in order that access could be had from the rear of all three lots to a public highway without being required to pass through the houses and front entrances thereof; that this passageway was reasonably necessary to the use of lots 2 and 3 for residence purposes; that this arrangement of the three lots, by which part of lot 1 was to be used in connection with and for the benefit of lots 2 and 3, was of a permanent character and was obvious and apparent to any ordinary person; that the passageway was continuously used by the occupants of lots 2 and 3

in reaching Twenty-fifth street, from the time it was laid out by Lucy E. Briggs down to a short time before the filing of the bill herein; that the three lots were thereafter sold by Lucy E. Briggs separately and to different persons, and that upon each subsequent sale of the lots, including the sales made to appellant and appellees, apparent signs of the servitude existed on lot 1 and marks of the burden on that lot were open and visible.

This court has in a number of cases announced the principles of law applicable to cases of this character. In *Ingals* v. *Plamondon,* 75 Ill. 118, it is said (p. 123) : "The rule of the common law upon the subject is, that where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an implied understanding and agreement that these advantages and burdens, respectively, shall continue as before the separation of the title." To the same effect are *Cihak* v. *Klekr,* 117 Ill. 643, and *Newell* v. *Sass,* 142 id. 104. Again, in *Morrison* v. *King,* 62 Ill. 30, it is held that an easement may be created by the disposition made of premises by the owner of the estate, and that upon a severance of the title the owners will take their respective shares as they existed in the hands of the former owner, and in this connection it is said (p. 35) : "The foundation of the doctrine of easement in this and similar classes of cases is a disposition and arrangement of the premises as to the uses of the different parts, by him having the unity of seizin, and then a severance. It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for, it would seem to follow that each portion of the severed premises should pass subject to all the burdens and advantages

imposed or conferred by the proper owner." The same language is found in *Clarke* v. *Gaffeney*, 116 Ill. 362.

The following from *Lampman* v. *Milks*, 21 N. Y. 505, which is referred to in *Ingals* v. *Plamondon, supra,* clearly expresses the law on this subject as administered in this State: "The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold, with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time re-arrange the qualities of the several parts. But the moment a severance occurs by the sale of a part, the right of the owner to re-distribute the properties of the respective portions ceases, and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

There is a conflict among the authorities outside this State as to whether the principles of law which we have above stated are applicable to a case involving a right of way. That no such distinction exists in this State between a right of way and other easements is apparent from an examination of the cases above cited, as the controversy in most of them was in regard to the existence of a right of way.

We are of the opinion that when Lucy E. Briggs disposed of the three lots in question without referring to the passageway in the deeds of conveyance, the purchaser of lot 1 took that lot burdened with the easement over the west end thereof in favor of lots 2 and 3.

It is contended, however, that when appellant purchased lot 1 the easement over the rear of that lot was not apparent from an inspection of the premises and she had no knowledge of its existence. Both the master and chancellor found otherwise, and we think their findings are justified by the evidence. Appellant herself testified that she removed the board walk extending across the rear of lot 1, and although she testified that there was no fence extending north and south across the lot near the west end thereof, yet she is contradicted in that statement by the testimony of her grantor and by other witnesses. The board walk which appellant found on lot 1 led from Twenty-fifth street to a gate on the line between lots 1 and 2, and this walk, after passing through the gate, continued across lot 2 to a gate leading into lot 3. We think the arrangement of the premises at the time appellant purchased lot 1 retained sufficient marks of the easement to put appellant upon inquiry as to the rights which the owners of lots 2 and 3 had in the west end of lot 1.

It is said that the gates across the passageway between lots were inconsistent with the theory of an easement. The greater weight of the evidence is to the effect that these gates were placed across the passageway after the lots had been sold by Lucy E. Briggs. The easement had therefore been created before the gates were erected, and the case is in this respect different from one where an easement by prescription is claimed and it is shown that gates were placed across the alleged right of way before the prescriptive period had expired. It does not appear that these gates interfered with the use of the passageway for the purposes for which it was intended.

The easement over lot 1 became appurtenant to lots 2 and 3 when the legal title to those lots became severed from that of lot 1. Each subsequent conveyance of lots 2 and 3 carried with it the easement, whether mentioned in the deed or not, (*Tinker* v. *Forbes,* 136 Ill. 221,) and each subsequent purchaser of lot 1 took that lot subject to the easement, as it was apparent from an inspection of the premises at the time of purchase. *Edwards* v. *Haeger,* 180 Ill. 99.

Appellees having established the fact that an easement existed over lot 1 in favor of lots 2 and 3, and having shown that appellant had placed a permanent obstruction across the right of way, were entitled to the relief awarded by the superior court.

The decree of the superior court will therefore be affirmed.

*Decree affirmed.*