(No. 15708.—Decree affirmed.)
ELIZABETH MOULTON *et al.* Appellants, *vs.* GUY DE GUIBERT, Appellee.

*Opinion filed June 17, 1924.*

1. HIGHWAYS—*what does not show existence of a public highway—injunction.*   Where the evidence shows that the use of a roadway through a pasture to the lands of adjoining owners was upon condition that the gate in the fence which had been constructed across the roadway be kept closed, and where there was no original common owner of all lands involved so as to give a right of way by necessity, the owner of the pasture cannot be enjoined from obstructing the roadway, even though some work had been done on the road, which, however, was not of the character and extent of work done on public roads.

2. SAME—*burden is on claimant to prove a public highway by prescription.*   The fact that a passageway is closed by a fence does not preclude the acquiring of an easement by prescription where the gates in the fence do not interfere with the free use of the passageway for the purpose for which it was intended, but the burden of proof is upon the party claiming the existence of a public highway to show that the way is public.

3. SAME—*user must be under claim of right to establish highway by prescription.*   Mere user of a roadway, to establish a highway by prescription, must be under a claim of right by the public and not by mere acquiescence of the owner.

APPEAL from the Circuit Court of Woodford county; the Hon. STEVENS R. BAKER, Judge, presiding.

ORMAN RIDGELY, for appellants.

W. L. ELLWOOD, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Appellants filed a bill for injunction in the circuit court of Woodford county seeking to restrain appellee from closing or interfering with their and the public use of a certain roadway alleged to have been established for about fifty years and to have been used during that time as a public road. The matter was referred to a master in chancery. His findings were in favor of appellee. The objections to the master's report were overruled and the trial court found the equities were with appellee. The decree directed that the injunction be dissolved and the bill dismissed for want of equity at appellants' costs. Appellee filed suggestions of damages caused by the wrongful issuing of the injunction, and the cause for that purpose was continued for hearing. The case has been brought to this court by appeal.

Appellants, or some of them, and appellee, owned adjoining farms in Woodford county. A public highway runs through appellee's farm in a somewhat easterly and westerly direction. From the farm of appellants (sometimes called the Beavers farm) to the south of appellee's land, and for a short distance over the southern portion of his farm, runs a roadway connecting with the above mentioned road. The only issue in the case is whether this roadway is a public road, or whether it is a private road and the part of it running through appellee's land is only permissively used. No plat appears in the record, but a sufficiently accurate description may be given to determine the issue in the case. A number of deeds were introduced in evidence. Appellants traced ownership back to 1852. Appellee's grandfather and father had previously owned a part of the tract on which he lives, and the father subsequently purchased another portion of the present farm, consisting of 167 acres. There was no reference in any conveyance to a reservation or grant of a right of way, and it is not claimed there was ever a dedication of this passageway as

a public road. In the earlier years of the ownership of these two tracts of land much of it was open prairie and timber land. There were no fences between appellants' land and appellee's farm previous to about 1900. In that year appellee became a tenant of his father and afterward received a deed to the land. Owing, perhaps, to the contour of the land, it being near the Illinois river, the roads in the neighborhood of appellants' and appellee's farms do not follow section and half-section lines. One road, called the Bottom road, runs northeasterly and southwesterly. It is some distance west and north of appellants' land but runs through appellee's land in a northerly direction, and appellee's house is west of that road. A road called the Metamora road runs from this Bottom road in an easterly and somewhat southerly direction toward Cazenovia and Metamora, in the immediate vicinity of these two farms. Connecting with the Metamora road, the road in question starts from near the barn and house on the Beavers land and runs west for a few rods (different witnesses testifying to different distances) but perhaps not over eight rods, then turns north and runs sixty or eighty rods between appellants' land and the adjoining farm west, and then turns for a short distance to the northeast down a hill and runs between two hills on appellee's land, connecting with the Metamora road, as above stated, about twenty-five rods above the appellee's southern boundary. About 31 or 32 acres of this portion of appellee's land was a pasture, which he fenced about 1904. There was a traveled track or roadway running in the present location for many years, and apparently at one time there was some travel on this road to the south over other farms to another easterly and westerly road, but the farms to the south have been enclosed by fences and the roadway has been discontinued, so that at the time of the hearing the road in question served only the two or three farms near appellee's farm. It appears, also, that in earlier years there had been at least two other roads running across

a part of the Beavers farm which are not now used,—at least not to any extent. The Beavers farm touched the east and west (or Metamora) road only for a few rods some distance east of the roadway in question. There is a creek, called Coon creek, running in a northerly direction through appellants' and appellee's lands, which is between the house on appellants' land and the point at which their land touches the Metamora road.

Most of the witnesses who testified in this case knew of the fences and gates on the pasture land of appellee and on the land of appellants and when they were erected, and that never had any question arisen, until recently, as to their being properly erected, but there is a dispute as to how the fenced portion, and especially the gates, came to be erected and what the character of the roadway is. Appellee testified that when he fenced the pasture land at the south part of his farm, a previous owner of the Beavers farm, J. H. Schneider, asked him for the privilege of crossing the land where the roadway now is, and in pursuance of that arrangement Schneider put up two board gates about fourteen feet in width, one on the south fence and one on the north fence of the pasture. No contract was signed, though it appears from the testimony that a contract had been prepared at the time of the arrangement but never executed, because the plan went into effect immediately and the relations of appellee and Schneider were so agreeable it was not deemed necessary to have a written agreement, and during all the time Schneider owned the place he used the road and kept the gates closed in pursuance of the understanding. A letter was introduced from Schneider, who lives in Oklahoma, to the effect that he had no agreement with appellee about fencing, but that appellee came to him after he (Schneider) had fenced his farm and said he intended to fence his, and did so, and they each put in their own gates. The testimony of a brother-in-law appears to corroborate appellee that appellee's fence was put in before

or at the same time, and that Schneider put up a gate so he could go across the pasture to the public road, and that he always kept the gates closed. Appellee further testified that when Schneider sold the place to Ege Beavers, the deceased husband of appellant Elizabeth Moulton, he gave Beavers permission to cross the pasture land if he would keep the gates closed, and that Beavers always did keep them closed, frequently closing them when third parties left them open. The preponderance of the evidence appears to show that the gates were kept closed after the fences were put in and up to the time of the ownership of appellants. The appellee testified that after Beavers' death the latter's widow came to him and desired to make a new arrangement about the gates and one of the fences so as to avoid stopping her car on a steep grade in order to open one of the gates, and that she gave him the use of four or five acres additional pasture ground, and the fence was changed. The gates, according to appellee's testimony, were not kept closed in 1922, and he then built a fence across the roadway where the gates had been, after he had given appellants notice. Someone tore down the fence and the same was re-built, and later the injunction was served by appellants upon appellee.

It is suggested in the brief of appellants that there was at one time a fence along the west side of the road as it ran through appellee's pasture, and that some of the old posts remain. As we read the testimony, it is not at all clear there was a fence running north and south along the road, but it was stated there was a fence west of the road, and one of the witnesses stated the fence did not run north and south. That would not be controlling, however, in any event, as there was no testimony tending to show that the land was attempted to be enclosed from the roadway upon both sides or was intended to be a boundary on the roadway.

There was an attempt to show that the roadway had been worked and been recognized as a public road by high-

way commissioners and those working the road. Two high-
way commissioners, one of them the present incumbent, and
one who owned the land immediately west and on whose
land a part of the roadway runs, both apparently disin-
terested witnesses, testified the roadway was never recog-
nized as a public highway and work on it was never paid
for, though one of appellants had been loaned the highway
grader and drag for his own use. Three of appellants, who
are the interested parties, testified they did work the road
and received pay for the same, and Benjamin Moulton,
the second husband of appellant Elizabeth Moulton, testi-
fied that he, as supervisor, had paid his step-sons for their
work. In the letter of Schneider heretofore referred to,
he stated that he had worked out his poll-tax on the road-
way at the time he owned the land. Seven or eight wit-
nesses for appellee, who were familiar with the farms and
roads, some of them for many years, testified to the condi-
tions existing, and some of them knew that travel through
to the south road had ceased with the fencing of the farms
south of appellants' land, and all of these witnesses testified
the road to appellants' farm was not a public road. Several
witnesses who testified for appellants stated that the road-
way has been in the same condition for forty or fifty years,
but there appears to be no special contention that there was
a general use of the road in question to the east road after
the owners fenced their lands to the south of appellants'
land, except that occasionally persons opened up fences or
gates for the purpose of going through. Some witnesses
did not pretend to be familiar with the road in question ex-
cept in a general way, such as might be gained from ob-
servation in passing along the main road. There was noth-
ing in the testimony to show that there had ever been a
common ownership of appellants' and appellee's lands as
one tract. There had not been any arrangement of the
farms and the establishment of the road to suit the con-
venience of houses or according to a mutual farm plan, ex-

cept that the roadway in question runs along the division line between appellants' land and the farm to the west, now owned by Albert Kirchgessner, the road commissioner heretofore referred to who testified that the road is not a public road. There is therefore no question of an easement based upon purchasers taking their land from a common owner having the farms and road arranged so that one portion derives an advantage from another portion. Appellee's land, so far as the testimony shows, was never at any time under the control of anyone owning appellants' land.

Appellants' counsel argues that this case is much like the case of *Hansen* v. *Green,* 275 Ill. 221, and should be decided upon the same principle. In that case it was shown that there had been a roadway for sixty-five years across the tract of one of the parties, and that the road had been recognized by the commissioners of highways for twenty years or more and had been kept in repair by them for that length of time. In that case, however, the roadway was enclosed for the convenience of the owner, the facts satisfactorily establishing the unobstructed use by the public generally for more than twenty years without the permission of anyone and under a claim of right which was not abandoned by the erection of the gate. Elizabeth Moulton testified that in this case the gate on the south side of appellee's pasture was taken away by mutual arrangement between herself and appellee, and appellee helped one of appellants, the son of Mrs. Moulton, to take out a part of the fence, which was turned about eighteen rods south, and the gate was moved to the top of the hill for appellants' convenience in reaching the road and to avoid stopping their car on an incline. According to appellee's testimony he moved the fence back to the line just previous to the service of the writ of injunction. The brother-in-law of Schneider, as we have stated, testified that Schneider put up a gate so he could go across appellee's pasture to the public road.

Notwithstanding the conflicting testimony we think the evidence shows that there was no public highway from the east or west road but only a permissive use, which the evidence shows ceased as to the lands south of appellants' land practically altogether, but was continued as to the occupants of appellants' land upon condition that the gates at the pasture be kept closed, after that farm was fenced. While the fact that a passageway is closed does not preclude the acquiring of an easement by prescription where the gates do not interfere with the free use of the passageway for the purpose for which it was intended, (*Smith* v. *Roath,* 238 Ill. 247,) the burden of proof is upon appellants to show that this roadway is a public highway by prescription or otherwise. The testimony shows that until recent years much of the farm land in this neighborhood was unfenced and there were no restrictions as to travel, but as the farms became fenced, general travel over the portions fenced was discontinued and the right of the respective owners to fence their farms was recognized. Mere travel by user must be under a claim of right by the public and not by mere acquiescence of the owner. (*Palmer* v. *City of Chicago,* 248 Ill. 201.) Even though there had been some work done on the road, (about which there is dispute,) it was not of the character and extent as the work done on the public roads and not sufficient to change the character of the road. *Doss* v. *Bunyan,* 262 Ill. 101.

Some of the witnesses testified that owing to the contour of the land considerable difficulty would be encountered and expense incurred in running a road from appellants' land to the main road if the route were confined to appellants' land, and that if it passed over the land of others, as one of the old roads apparently did, a new arrangement would have to be made with adjoining land owners. Some witnesses testified that other portions of the land could be crossed so as to connect with the public road, and appellee, in the notice he gave appellants, suggested he would be

willing to make an arrangement as to another route which would pass over a portion of his land other than the pasture land. The fact that there had been other private roads running from appellants' land we think establishes the fact that this was not a way of necessity.

Under the circumstances shown in the record we think the injunction was properly dissolved and the bill dismissed. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*