(No. 33608.—

LILLIAN M. DEISENROTH, Appellee, *vs.* LOREN L. DODGE
*et al.*, Appellants.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

KLINGBIEL, J., took no part.

EAGLE & EAGLE, of Rock Island, for appellants.

EARL L. SCOTT, and LEO J. HERBERT, both of Rock Island, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendants appeal directly to this court from a decree of the circuit court of Rock Island County adjudging the plaintiff to be the owner of an easement of way over defendants' property, perpetually enjoining defendants from interfering with plaintiff's use thereof or obstructing the same, and assessing $110 as damages against defendants in favor of the plaintiff. The right of plaintiff to a perpetual easement over property owned by defendants being the sole issue in this case, a freehold is involved warranting direct appeal to this court. The sole question presented is whether or not the plaintiff is entitled to an easement by implication over property owned by the defendants.

The properties in question were part of a larger tract, owned by one Mathias Bachman and his descendants since 1903, being bounded on the south by Rock River, on the north by a highway running east and west and known as

Blackhawk Road, and on the west side by a government roadway running north and south.

For several years the Bachmans leased out a number of lots, over 12 in number, along Rock River, and the various persons leasing such lots erected cottages retaining title to the cottages with the privilege of removal.

In order to reach the river-front cottages, the tenants used and maintained a private roadway running from Blackhawk Road down the east side of the Bachman tract toward Rock River, then turning west and running a short distance in back of all the cottages, emerging on the government roadway along the west side of the tract. For more than fifty years the roadway was in use, first as a means of access to a fishing camp and later for the movement of farm implements in farming operations. Since prior to 1937 the roadway had been improved with gravel to a width of about 16 feet, was plainly visible, and was commonly used by the owners of the river-front cottages for ingress and egress to their properties.

After the last of the direct Bachman heirs died, a suit for the partition of this and other property was instituted by the then owners. The decree of partition appointed partition commissioners with directions to divide the tract in question into lots and to make a survey and plat thereof, which was done. Such plat provided for two rows of lots, one along the river and another abutting this row to the north, with the north boundary of such second row of lots along Blackhawk Road. In the plat lots A to O inclusive, from east to west, were river-front lots and lots P to A-A inclusive, from west to east, abutted on Blackhawk Road. The plat does not indicate any roadways, existent or non-existent, so that no means of access by land to the river front lots of any nature whatsoever is shown thereby. The survey of the lots was made so that each of the cottages along the river was situated on a separate lot. None of the lots abutting on Blackhawk Road were improved.

Subsequently a decree was entered in the partition proceeding confirming the commissioners' report and ordering the sale of the premises, in the terms and conditions of which it was provided that the several lots in this tract of land should first be offered separately, and if the price bid for each lot when offered separately should equal or exceed the appraised value as fixed by the commissioners then such lot should not be offered for sale again, either in combination or as part of the whole. Under such decree the owners of the buildings were given the right to remove the same within a reasonable time if they did not become the purchasers of the land.

Plaintiff's father had purchased a cottage situated on tract B in 1937, which was later rebuilt and in existence at the time of sale. At the partition sale, which was held on the premises, the sequence in which lots were offered was from east to west along the river, thence back eastward along the other row of lots in alphabetical order. Bids were first asked on lot A, but no one bid a sufficient amount and it was not struck off. Then the plaintiff bid high on lot B and it was struck off to her. Others bid high and had struck off to them the remaining lots west along the river. As the second row of lots abutting on Blackhawk Road was offered, either no bid was received at all, or no bid meeting the minimum requirement of the sale order, and most, if not all, of these lots were unsold when the first round of the auction was complete. Inquiries had been made by various persons at the sale as to the status of the gravel road not shown on the plat, and no satisfactory answer could be obtained from anyone in authority. The plaintiff, after the first round of the auction, went to the attorney for the estate and had some conversation with him, which was overheard by others. Although the details of such conversation are disputed, it is agreed that such attorney advised plaintiff to buy the lot in the second row back of the river-front lot she had purchased, for protection, in

order to be assured of access to her river-front lot. Thereafter the north row of lots was again offered and the same people who had bought river front lots and failed to bid on this second row then put in adequate bids so that practically all lots were sold and all cottage owners acquired space to build a new means of access from Blackhawk Road to their houses if they so desired. Following plaintiff's high bid on Z, being the tract behind lot B on which she had previously been high bidder, the defendant Bleuer bid high on tract A-A, and the defendant Dodge bid high on tract A.

Thereafter the circuit court confirmed the sale and deeds were issued to the various purchasers using metes and bounds descriptions, with no reference therein to the roadway in question.

The chancellor, after considering voluminous evidence on the question, found as a matter of fact that there was no understanding or agreement, either prior to or at the time of the sale, that the used and visible road in question would be closed or not remain open.

Thereafter, various purchasers of river lots to the west of plaintiff's property built access roads direct to Blackhawk Road and in diverse manners blocked the old roadway. However, defendants did not at first dispute plaintiff's right to use the old roadway across lots A-A and A to her lot B. Plaintiff claims that prior to the sale she had an agreement with the defendants for the improvement and maintenance of this gravel road at their joint expense. The defendants do not completely deny such agreement, but assert that they contemplated dividing the expense as to that portion of the road which was jointly used, and that they did not feel called upon to help pay for a portion of the road beyond that jointly used by them and to pay for improvements up to and on plaintiff's own lot.

After the sale plaintiff contacted the defendant Dodge and told him that if he and defendant Bleuer would give her an easement across lots A-A and A, she would be will-

ing to sell tract Z for $1200. Dodge thereupon proceeded to find a purchaser for tract Z, obtained a down payment of $100, drew up a proposed contract for the sale thereof and had an easement drawn up by an attorney. Thereafter, Dodge advised the tenant of plaintiff's river-front cottage that when he moved out the defendants were going to close the roadway, and they did so. This suit by plaintiff to establish an easement of way by implication followed.

Defendants-appellants first contend that the plaintiff understood that the roadway in dispute was to be closed and therefore there can be no easement by implication. This was a vigorously disputed question of fact in the trial court. The trial judge who heard the witnesses expressly found that there was no such understanding or agreement as argued by the defendants, either prior to or at the time of sale. From a consideration of the record we cannot say that such finding is clearly and palpably contrary to the manifest weight of the evidence and we will not disturb the finding of the trial court under such circumstances. *Lewis* v. *McCreedy*, 378 Ill. 264; *Chance* v. *Kimbrell*, 376 Ill. 615.

Defendants further argue that there can be no easement by implication since plaintiff's own land abuts directly upon the highway to which she seeks access, and the easement sought is not so highly necessary as to justify the burden thereby cast on the defendants' lands.

As to an easement by "way of necessity," one may be implied where the land is surrounded by land of the grantor or others, (*Trapp* v. *Gordon*, 366 Ill. 102; *Gilfoy* v. *Randall*, 274 Ill. 128;) but if there is a way into and out of the land sold no way of necessity is implied. (*Moulton* v. *De Guibert*, 312 Ill. 567; *Traylor* v. *Parkinson*, 355 Ill. 476.) In the instant case no way of necessity can be implied by reason of the fact that plaintiff does have means of ingress or egress to her property if she chooses to build such way.

However, the question must still be answered as to

whether or not plaintiff acquired by implication an easement corresponding to the pre-existing "quasi-easement." Such an easement can arise only upon the severance of unity of title, where an obvious servitude is imposed on one part of an estate. (*Simonson* v. *Goldberg,* 338 Ill. 420.) The general rule may be expressed that where during the unity of title an apparent and obvious, permanent, continuous and actual servitude or use is imposed on one part of an estate in favor of another, which at the time of severance of unity is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such unity of ownership there arises by implication of law a grant of the right to continue such use even though such grant is not reserved or specified in the deed. *Carter* v. *Michel,* 403 Ill. 610; *Koubenec* v. *Moore,* 399 Ill. 620; *Fossum* v. *Stark,* 302 Ill. 99; *Powers* v. *Heffernan,* 233 Ill. 597; *Martin* v. *Murphy,* 221 Ill. 632.

In such cases it is not necessary that the claimed easement be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is reasonable and highly convenient and beneficial thereto. *Koubenec* v. *Moore,* 399 Ill. 620; *Fossum* v. *Stark,* 302 Ill. 99; *Hankins* v. *Hendricks,* 247 Ill. 517; *Martin* v. *Murphy,* 221 Ill. 632; *Cihak* v. *Klekr,* 117 Ill. 643.

This doctrine of implied easements is not limited to cases of direct conveyance by deed of the common owner, but applies to severance of unity of title by judicial proceedings of any character, including judgment in partition proceedings, if all other essentials are present. *Leitch* v. *Hine,* 393 Ill. 211; 17 Am. Jur. p. 950.

There seems to be no dispute that the roadway here in question was apparent and obvious, permanent, and subject to continuous and actual use up to the time of severance of unity of ownership. The act of severance of unity of ownership was the judicial acceptance and confirmation of the report of sale of all of the lots at one and the same

time. The bid of plaintiff and other bidders at the sale merely constituted continuing offers to purchase until confirmed. The striking off of the property to the highest bidder carried no interest or title, but the judicial decree of confirmation was the effective act of severance of unity of title. (*Ryerson* v. *Apland,* 378 Ill. 472.) The basic question is what were those continuing offers to purchase, and what was intended to be passed and conveyed in the judicial proceedings of partition. Do the surrounding circumstances raise a presumption that the property conveyed was, not just a riverside lot, but a riverside lot with a roadway easement appurtenant thereto?

The trial court, after hearing the evidence, so determined. As the river-front lots were offered, the various cottage owners bid in the lots occupied by them. On the first round of the auction, most if not all of the second row of lots remained unsold. Inquiries were made at the sale as to the status of the road, but no satisfactory answer was obtained. Thereafter, the attorney for the estate advised plaintiff to buy the lot fronting on Blackhawk Road for protection. When the second row of lots was then offered, the same people who purchased lots on the river front and failed to bid on the second row bought the second row lots for protection. Such offers on second row lots would not change the nature of offers previously made on river-front lots. In our opinion the trial court was amply warranted by the evidence of surrounding circumstances in concluding that the court, the partition commissioners, and the purchasers at the time of sale presumed and intended that the road easement would pass as appurtenant to the river-front lots. At the time of the action, it was apparent to the seller and buyers that the roadway in question was not only highly convenient but reasonably necessary to the enjoyment of the river-front lots purchased. Under such circumstances it is immaterial that the partition decree of the circuit court did not mention any roadway or that the

plat did not show any roadway, since the surrounding circumstances raise the presumption that such roadway easement was intended. Likewise, what was done by plaintiff or others as to this roadway or as to acquiring alternative means of access to river-front lots after the bids thereon, whether before or after confirmation of the sale, would not alter the nature of the offers on the lots and their acceptance by decree of confirmation as including such easement.

The cases cited by defendants as to the question of necessity or convenience are not applicable because they involve situations where an alternate outlet was available on the primary lot owned by the party.

It is our opinion that the plaintiff bought her river-front lot at a time and under circumstances where all the conditions and prerequisites for an easement by implication obtained and that she acquired with her river-front lot the right to the continued and unobstructed use of the roadway in question. The trial court decree was correct and is affirmed.

*Decree affirmed.*

Mr. JUSTICE KLINGBIEL took no part in the consideration or decision of this case.