(No. 34639.—

MICHAEL J. SHEEHAN, JR., *et al.*, Appellees, *vs.* JOSEPH E. SAGONA *et al.*, Appellants.

*Opinion filed March 20, 1958.*

FOLTZ, HAYE & KEEGAN, of Rockford, for appellants.

BERRY & SIMMONS, of Rockford, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiffs-appellees, Michael J. Sheehan, Jr., and Patricia Louise Sheehan, his wife, hereinafter referred to as plaintiffs, and defendants-appellants, Joseph E. Sagona and Isabella Sagona, his wife, hereinafter referred to as defendants, own adjoining properties located on the east side of North Hinkley Avenue, a north-south street, in Rockford, Illinois. Plaintiffs' property is located at No. 437, and defendants' property is located immediately north thereof at No. 439.

By this action in the circuit court of Winnebago County plaintiffs sought to establish an easement for a driveway along the line which divides the two properties. Plaintiffs prevailed and the defendants come to this court on direct appeal, a freehold being involved.

The decree appealed from finds an easement for a driveway exists over the south 5 feet of defendants' property and over the north 2 feet of plaintiffs' property extending 110 feet east from the west line of both premises, thence southeasterly at an angle of 30 degrees to a point 135 feet, more or less, from the west line, created for the purpose of ingress and egress to the rear of the premises. It perpetually enjoins defendants from interfering with the free use of the driveway by the plaintiffs and orders the defendants to remove stakes and obstacles placed by them within the bounds of said easement of right of way within 10 days.

To reverse the decree, defendants insist "there is no evidence of the use of the driveway prior to the severance by the former common owner, nor is there evidence that the driveway has been used by plaintiffs and their predecessors in title continuously and uninterruptedly for 20

years under a claim of right prior to the defendants' obstruction of the driveway."

Plaintiffs answer "there is ample evidence to show that the driveway was intended by the legal common owner of the two adjoining pieces of property to be used as a common driveway and that it had been so used prior to the time of the severance of title by the former common owner; and further, that there was ample evidence to show that the plaintiffs and their predecessors in title had used the driveway under claim of right, openly, notoriously, continuously and uninterruptedly for over 20 years immediately prior to the defendants' obstruction of the driveway."

It is plaintiffs' theory that there are two bases for the easement, both established by the evidence: (1) by implication arising out of a prior common ownership of the properties; (2) by prescription through 20 years adverse continued and uninterrupted possession under a claim of right.

The parties stipulated that one Harry B. Andrews owned both properties during the period 1911 to 1915 and the evidence shows, as to the property at No. 437, that the residence and the building in which the garage is now located were either moved on to or constructed on the property prior to the separation of title by the conveyance thereof by the common owner to plaintiffs' predecessors in title, and that the residence on the property at No. 439 was constructed prior to and owned by the common owner subsequent to such conveyance, and further that the garage at No. 439 was constructed by the defendants some time subsequent to the year 1950.

At the time of the acquisition of the premises at No. 439 by the defendants, there was a driveway running in a general easterly and westerly direction on both sides of the common property line of the above described premises and near and parallel to a sidewalk located on the north side of plaintiff's property, and past a tree that was located on

defendants' property, said driveway then extending from North Hinkley Avenue east to the rear of the houses on the two properties and then to the garage located on plaintiffs' property. The driveway was later extended by the defendants to their newly constructed garage. The defendants improved the driveway by surfacing it with crushed rock. The defendants and the then owners and occupants of the property at No. 437, the latter being the father and mother of the plaintiff, Patricia Louise Sheehan, used the driveway in common for a vehicular passageway for a period of years from 1950 until September, 1956, when the mother complained to one of the defendants about their cars being parked in the common driveway so that it was necessary for the plaintiffs to drive their car on their grass in order to pass them. During the disagreement, one or both of them made reference to fencing in their property. Thereafter, defendants widened the drive to the north to provide a drive of sufficient width for their purposes on their own property at No. 439, and on October 27, 1956, caused iron stakes to be placed 6 inches north of the surveyed property line within the bounds of the driveway as it originally existed so that an automobile could not be driven between the stakes and the dwelling house located on the premises at No. 437. The plat of survey, defendants' exhibit 2, shows that the north edge of the sidewalk on the plaintiffs' property at No. 437 is located 2 feet south of the property line; that there is a distance of 6 feet 9 inches between the north side of the frame residence on the premises at No. 437 and the common property line; and that the distance between the south side of plaintiffs' house and the south property line of the premises at No. 437 is too narrow for an automobile driveway. Plaintiffs, who are the present occupants and purchasers of the property at No. 437, have not used the driveway because they occupied the residence subsequent to the time that the iron stakes were driven within the bounds of the easement.

The rule is well established that where the owner of an estate has arranged it so that one portion of it derives a benefit and advantage from the other, of a permanent, open and visible character, and then sells a portion, the purchaser takes the portion sold with all the benefits and burdens which appear, at the time of sale, to belong to it; and the moment the severance occurs easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of sale. *Gilbert* v. *Chicago Title and Trust Company,* 7 Ill.2d 496; *Walters* v. *Gadde,* 390 Ill. 518.

As we pointed out in *Carter* v. *Michel,* 403 Ill. 610, the essential elements for an easement by implication are as follows: (1) There must be a separation of title; (2) before the separation occurs, the use must have been long continued, obvious, or manifest, to a degree which shows permanency; and (3) the use of the claimed easement must be essential to the beneficial enjoyment of the land granted or retained. *Cosmopolitan National Bank* v. *Chicago Title and Trust Co.* 7 Ill.2d 471; *Walker* v. *Witt,* 4 Ill.2d 16.

As to the facts in this case relating to the creation of an easement by implication, both parties agree that there was a separation of title when Harry B. Andrews, the common owner, deeded the plaintiffs' property at No. 437 to Lee Jacques on January 31, 1913, and that subsequent thereto, the said Harry B. Andrews also conveyed the defendants' property at No. 439 to Maude Benham by deed dated November 2, 1915.

Plaintiffs' witness, B. Jay Knight, who acquired the title to the property at No. 437 from Lee Jacques, testified that in the period from 1910 to 1913, the witness lived in the immediate vicinity of the property, and at that time he observed that there was a driveway surfaced with gravel along the north side of the property at No. 437; that at the time he purchased the property the driveway had been used and the markings of vehicles of various kinds were

clearly on the gravel of the driveway; and that thereafter he put cinders on the portion of the drive on his property between his garage and the graveled section. He further testified that when he purchased the property he asked Harry B. Andrews, who was then representing Lee Jacques, the seller, as his attorney, "What about this driveway? If I move in there, is that a joint driveway?" and that Harry B. Andrews answered, "Yes." The record shows that this conversation took place at or near the time that Harry B. Andrews owned both places and was selling No. 437 to Lee Jacques on a contract for deed and before or near the time that the separation of title was made by Harry B. Andrews. His answer tends to characterize the use of the premises as permanent. The evidence establishes that from the time this witness first viewed the property in 1910, the driveway in question had been used to serve as a vehicular passageway from Hinkley Avenue for the property at No. 437 to and from the building converted into a garage located at the rear thereof. Thus, the property at No. 439 has been servient to the property at No. 437 since the inception of the use of the passageway as a vehicular drive. The record clearly indicates that the passageway showed definite signs of long continued, obvious or manifest use prior to the admitted separation of title sufficient to show that the use was meant to be permanent. It is not required that such use be made by any particular person for any definite length of time prior to the separation of title. It is sufficient if the use is made in a manner that establishes that such use is intended to be permanent. It is our view that the plaintiffs have sustained their burden of proof by clear and convincing evidence that the use of this drive located on both sides of the common property line was intended to be permanent.

As to the final requirement of the rule, we have considered the evidence that the parents of Harry B. Andrews

by a quitclaim deed dated November 21, 1912, had conveyed for use as an alley or driveway a strip approximately 22.40 feet in width extending from lot 5 through and including lot 14 of the same block in the same subdivision to a passageway that entered on Hinkley Avenue. This deed was executed subsequent to the time that Harry B. Andrews has acquired title to Nos. 437 and 439 from his parents and subsequent to the time that the driveway in question was put in use.

We also note that the frame building used as a garage on No. 437 was so situated that the entrance thereto was on the west side and not conveniently accessible to the alley conveyed in the quitclaim deed.

It is recognized in this regard that the claimed easement need not be really necessary for the enjoyment of the estate granted or retained but it is sufficient if it is highly convenient and beneficial. *Cosmopolitan National Bank* v. *Chicago Title and Trust Co.* 7 Ill.2d 471; *Walker* v. *Witt,* 4 Ill.2d 16; *Carter* v. *Michel,* 403 Ill. 610; *Koubenec* v. *Moore,* 399 Ill. 620; *Walters* v. *Gadde,* 390 Ill. 518.

That the use of this driveway is highly convenient and beneficial to the plaintiffs is clearly demonstrated in the evidence and no proof is tendered by the defendant to contradict the same. There is no other space available for a driveway from the rear of the property at No. 437 to Hinkley Avenue other than by way of the unused and unimproved alley or driveway conveyed in the quitclaim deed.

It is only by using the driveway described in the decree that vehicles may conveniently and beneficially serve the plaintiffs' property without remaining parked on the public street or on the property of others. A circuitous route over an unimproved alley or driveway at the rear of the premises which has not been shown to have been dedicated to the public and is not maintained or regularly used by other adjoining property owners, does not provide adequate alter-

348

nate facilities to defeat the easement by implication upon the ground that the use thereof is not essential to the enjoyment of the land retained.

Finally, defendants argue that the location of the driveway on a strip 5 feet of even width north of the surveyed property line on the defendants' property and 2 feet of even width from the same line on the plaintiffs' property for a distance of 110 feet from the front property line and then turning out at an angle of 30 degrees to the right to a point 135 feet, more or less, from the west line of plaintiffs' property is not supported by the evidence. We have examined the plat of survey, defendants' exhibit 2, and we do not find that the easement as described in the decree is inconsistent with the data set forth thereon. This decree recognizes cross easements and makes plaintiffs' property servient to defendants' property. It provides the relief to which plaintiffs are entitled and protects the rights of the defendants.

Since we have concluded that the plaintiffs are entitled to an easement by implication as described in the decree, it is not necessary to consider their alternate claim for an easement by prescription.

For the reasons stated, the decree of the circuit court of Winnebago County is affirmed.

*Decree affirmed.*