MILLER BROS. LUMBER COMPANY, INC., Plaintiff-Appellant, *v.* MAYFAIR LUMBER COMPANY *et al.,* Defendants-Appellees.

(No. 54921;

First District—February 3, 1972.

Gutstein & Cope, and Maurice J. Nathanson, both of Chicago, (Ronald S. Cope, of counsel,) for appellant.

Edward Warden, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff brought an action to enjoin defendants from interferring with

618

plaintiff's use of a certain roadway which provided entrance to plaintiff's property. The circuit court entered a decree in favor of defendants, and plaintiff appeals. Plaintiff's complaint charged that the roadway in question was a public street which plaintiff was entitled to use. Defendant's answer denied the existence of a public street. The case was referred to a master in chancery; both sides presented their evidence and exhibits, and submitted the matter to the master for a final report. Thereafter on his own motion, the master disqualified himself. Rather than re-try the case, the parties stipulated that the entire record be submitted to the judge for decision. At oral argument, the judge expressed doubt that plaintiff had proved the existence of a public street. Plaintiff then obtained leave to file an amendment to the complaint; the amendment charged that plaintiff had obtained an easement by implication in the roadway. The trial judge heard additional argument, and entered a decree in favor of defendants. On appeal plaintiff maintains that it is entitled to the use of the roadway, arguing that it obtained an easement by implication, or that the use of the roadway created a public highway by prescription.

The alleged street or easement is located in a railroad freight yard in the City of Chicago bounded on the north by Lawrence Avenue, on the east by Cicero Avenue, on the south by Wilson Avenue and on the west by railroad tracks. The entire tract of land was owned by the Chicago and Northwestern Railroad Company from 1892 until 1961. Plaintiff purchased the south end of the yard along Wilson Avenue from the railroad in 1961, and used it as a secondary warehouse facility. Its trucks drove from its main facility located on Lawrence Avenue, a block west of the subject property. Plaintiff's trucks and customers ordinarily reached the subject property by means of the Lawrence Avenue entrance. After purchasing the property, plaintiff erected a fence and gate at the Wilson Avenue entrance. Plaintiff kept this gate locked after normal business hours and on Sundays and holidays. In 1962 defendants purchased the north end of the freight yard facing Lawrence Avenue. At the time of purchase defendants were aware of plaintiff's use of the roadway. Defendants erected a fence with a gate along Lawrence Avenue. At first, defendants kept the gate open during business hours, and plaintiff's employees and customers continued to use the Lawrence Avenue entrance. After a year, defendants locked the gate, and refused to permit plaintiff to use that entrance. Since that time, to gain access to its property in the subject freight yard, plaintiff's trucks drove south on Cicero Avenue to Wilson Avenue, then west on Wilson. This entrance is located next to concrete viaducts.

As to the roadway itself, plaintiff offered the testimony of its presi-

dent that it ran in a straight line from Lawrence to Wilson Avenue. However photographs of the freight yard introduced into evidence by plaintiff indicated that the roadway wound through the property with two right angle turns. The president could only guess as to the width of the roadway. He estimated that at its widest point it was 50 to 55 feet, that at the north end it was 30 to 40 feet, and that it was 19 feet at the south end.

During its years of ownership, the railroad rented different parts of the yard to various tenants. Twenty-eight railroad leases were introduced into evidence by plaintiff, and these revealed that over the years portions of the roadway were leased out. One lease running through 1957 indicated that the southerly 651 feet of the roadway was leased to a company for storage of sand and gravel. Another lease, also through 1957, showed that part of the roadway was let for the storage of sawdust.

Two customers of plaintiff, Rudl Rianoshek and Florian Jaworski, testified as to the inconvenience of entering plaintiff's property by way of Wilson Avenue. Rianoshek testified that it was difficult to get in and out if he had an especially long road. Jaworski on direct examination testified that because of the viaducts, entrance by way of Wilson Avenue was dangerous. On cross-examination he testified that over the years he frequently used the Wilson Avenue entrance in order to save time.

■■ Plaintiff first argues that it established the existence of an easement by implication over the roadway, and thus was entitled to the complete use of the roadway, including the Lawrence Avenue entrance. An easement by implication has been defined as follows: "Where the common owner of two parcels having a common right of way, conveys one or both without reference to the way in the grant, the presumption, absent contrary evidence, is that he intended to include in his grant an easement for the use of the way." (J. Denissen, Private Ways: *Title and Title Evidence* (1957), 45 Ill. Bar J. 686, 689.) In *Carter v. Michel,* 403 Ill. 610, 87 N.E.2d 759, at p. 617 our Supreme Court enunciated the essential elements for an easement by implication: "(1) there must be separation of the title; (2) before the separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent; and (3) it is necessary that the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained." In describing the requirements of the last element, the Supreme Court has said: "In such cases it is not necessary that the claimed easement by absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is reasonable and highly convenient and beneficial thereto." (*Deisenroth v. Dodge,* 7 Ill.2d 340, 346, 131 N.E.2d 17.) The

phrase "highly convenient" in the above decision must be given particular significance because, in *Traylor v. Parkinson*, 355 Ill. 476, 189 N.E. 307, the court held that mere convenience was not sufficient to establish the easement, stating at p. 482 that: "Although the exercise of the right or privilege claimed by the appellants has been convenient, it has never been reasonably necessary to the proper enjoyment of their respective estates." In the *Traylor* case, the court also held that the burden of proof as to each of the three elements rests with the party asserting the easement by implication.

■■■ In the instant case, only the fact that the railroad was the common owner of both parcels of land was undisputed. There was a factual dispute as to both other elements of an easement by implication, and the trier of fact properly resolved that dispute. With regards to the requirement that, prior to separation of title, the claimed use must have been so manifest as to show permanency, plaintiff offered testimony that the roadway existed since 1915 and was so used continually from that time. On the other hand, leases covering the entire freight yard were introduced into evidence. These leases indicated that parts of the tract of land, including the roadway, were rented to various tenants throughout the years. Two of these leases disclosed that portions of the claimed easement were rented for storage purposes just four years prior to plaintiff's purchase of the south tract of land. Evidence was also presented that the entire paved area was used, not as an easement or roadway, but in the normal operation of a railroad freight yard. It was the trial judge's duty to resolve this conflicting evidence, and we cannot say that he erred in holding that plaintiff had failed to meet its burden of proof. Similarly, under the facts and circumstances of this case, the trier of fact was entitled to find that the claimed use was not so highly convenient as to entitle plaintiff to an easement by implication. While it does appear from the testimony that the Lawrence Avenue entrance would be more convenient for plaintiff, it seems just as evident that the Wilson Avenue entrance was usable for plaintiff's beneficial enjoyment of the land. Here we note that one of plaintiff's customers testified that, even when the Lawrence Avenue entrance was available, he used the Wilson Avenue entrance to save time. Moreover, where there exists alternative means of access to property other than passing over lands of another without placing an unreasonable burden on plaintiff, a court should exercise caution in imposing additional burdens on defendant. *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill.App.2d 454, 220 N.E.2d 491.

■■■ Plaintiff next argues that the unrestricted use of the roadway, openly and notoriously by the public for more than fifteen years, created

a public highway by prescription. Ill. Rev. Stat. 1969, ch. 121, par. 2—202 provides in part as follows: "Highway—any public way for vehicular travel * * * which has been * * * used by the public as a highway for 15 years." In *Stengl v. Starr Bros.*, 370 Ill. 118, 120, 18 N.E.2d 179, at pp. 180—181, our Supreme Court said:

"[T]o establish a public highway by prescription under this statute there must be user by the public for the statutory period and such user must be adverse, under claim of right, continuous and uninterrupted, with knowledge of the owner of the estate, and yet without his consent. [Citation omitted] The burden of proving the existence of these facts rests upon the party pleading the prescription. [Citation omitted.] * * * where land is vacant and unoccupied and remains open to public use and travel, the mere travel across it without objection from the owners does not enable the public to acquire a road or highway over it. [Citation omitted.]"

■■ Plaintiff's own use of its portion of the freight yard is a persuasive argument against its position that a public highway was created on the roadway. As soon as it purchased the south tract, plaintiff erected a fence and gate at the Wilson Avenue entrance and locked the gate during non-business hours. Plaintiff's action was inconsistent with the idea of a public highway. And in our view, it is unreasonable to urge that a highway by prescription has been created as to defendant's portion of the roadway, but apparently not as to that part owned by plaintiff. Additionally, as we have noted, parts of the roadway were rented to prior tenants for storage purposes over the years. The record is also sparse as to any public use of the roadway; its use seems to have been confined primarily to employees and customers of the railroad and its tenants. These facts, too, give ample support to the trial court's finding that plaintiff did not prove the existence of a public highway.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Decree affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.