EUGENE PUSZKTEWICZ *et al.*, Plaintiffs-Appellees, *v.* S. DAVID FRIEDLANDER *et al.*, Defendants-Appellants.

(No. 56327;

First District (1st Division)—June 18, 1973.

Freeman, Freeman & Haas, of Chicago, (Adolph L. Haas, of counsel,) for appellants.

Edward R. Vrdolyak and Clifford A. Silverman, both of Chicago, for appellees.

Mr. JUSTICE EGAN delivered the opinion of the court:

In an amended petition for injunction the plaintiffs, Eugene Pusz-

kiewicz, his wife, Helen, and Dewey Johnston and his wife, Iva, alleged that they and the defendants, S. David Friedlander and his wife, Bernice, owned property abutting Forest Hills Road in Calumet City; that the defendants blocked and barricaded a part of Forest Hills Road thereby depriving the plaintiffs the use of the road; that even though the road had not been dedicated to Calumet City as a public road, it was the intention of the original grantors to have the road dedicated for highway purposes; that the use of the road by the plaintiffs for over 14 years had given them a prescriptive easement to the use of part of the defendants' property; and that the continuous use of the road for several years and the continuance of maintenance and repair of the road by the City indicated that the defendants had consented to an easement by implication. After the trial and a memorandum opinion of the trial court, by leave of court the plaintiffs filed an amendment to the amended petition alleging that Forest Hills Road had become a highway under the provisions of Illinois Revised Statutes 1969, ch. 121, sec. 2—202. The trial judge found that an easement by implication, as well as by necessity, existed on the east 20 feet of the defendants' property; and that the road was a public highway under the provisions of ch. 121, sec. 2—202. The defendants were ordered to remove a brick wall and hedges from their property. It is the defendants' principal contention that the findings of the trial judge are against the manifest weight of the evidence.

On October 3, 1957, Anthony J. Micheli acquired an irregular tract of Forest Preserve land bounded on the north by Michigan City Road, which runs diagonally southeast and northwest, and on the south by a line 330 feet wide extending east and west. To the south of that line is another tract, also 330 feet wide, which is bounded by 159th Street on the south. Micheli did not subdivide the tract but sold it one piece at a time by metes and bounds. The entire tract, as it exists today, consists of six lots; three lots on the east section and three lots on the west section. The lot in the northwest corner of the tract was retained by Micheli and later conveyed to its present owner, Polloto, in 1966, by a deed which contained no reservation for public highway purposes. Immediately south of the Polloto lot is the land presently owned by Tyrell, who obtained his property by deed in 1955 which contained a reservation of the east 20 feet from highway purposes. Immediately to the south of Tyrell is the lot acquired by the defendants, the Friedlanders, in 1956. Their deed contained no reservation for public highway purposes. The three lots in the east section all contained express reservations of the west 20 feet for highway purposes. Chura became the owner of the northeast lot by a deed in 1951. Directly south of Chura in the middle of the east section is the lot owned by the plaintiffs, Johnstons, which

they acquired by deed in 1955. To the south of the Johnstons in the southeast corner lies the plaintiffs, Puszkiewiczs' lot which they acquired by deed in 1951.

Access to the Micheli tract from Michigan City Road is accomplished by the use of Forest Hills Drive (also called Forest Hills Road). All of the lot owners, except Chura, have driveways abutting Forest Hills Drive, which runs roughly through the center of the tract to a dead end at the southern edge of the tract. Forest Hills Drive is not straight nor does it confine itself to the areas reserved for public highway purposes; it varies in width from approximately 12 feet at one point to approximately 40 feet at another. The center lines of the lots do not correspond to the center line of the road. The roadway is seal-coated from Michigan City Road up to the south end of the Puszkiewiczs' driveway, which is several feet south of the Friedlander driveway. From the Puszkiewicz driveway south to the dead end, the roadway consists only of unsurfaced stones, trees, bushes and a brick planter, and is approximately 70 feet long. It lies entirely between the lots of Puszkiewicz and Friedlander. This area is the focal point of the lawsuit.

On that part of his lot reserved for highway purposes, Puszkiewicz planted several trees and a row of bushes 9 feet south of his driveway extending 59 feet south. They have been there between 10 and 15 years. He also has flagstone running from his driveway south to his trees and bushes; the flagstone is between 8 and 12 inches high and extends 2 feet into the space reserved for a highway.

Johnston also has the same type of flagstone 2½ feet within the reserved area running from his driveway to that of Puskiewicz.

Friedlander planted hedges on the east 20 feet of his property approximately 4 years ago with no complaints from the plaintiffs. He also built a brick planter at the dead end of the roadway on the east 20 feet of his property in July of 1970; it is L-shaped, 6 feet high, extending 9 feet north, and is 3 feet wide. The trial judge ordered the defendant to remove these hedges and this planter.

In August of 1966 Calumet City seal-coated Forest Hills Drive at the request of the people living in the area. The work included stoning, asphalting and chipping, and rolling south of Michigan City Road to the front of the Puszkiewicz residence. In 1967 a water condition existed at the intersection of Forest Hills Drive and Michigan City Road, and the City, at the request of the adjoining property owners, installed a catch basin to alleviate the problem. Friedlander had complained before the installation about the hazardous condition that would be created in the winter due to the water. In 1969, the City resealed the road, again at the

request of the residents in the area including the defendant, who told the building commissioner that the street was getting into a deplorable condition. The City also plowed the snow and picked up the garbage on Forest Hills Drive. Every resident of the City paid for garbage service at the rate of $.50 per month. The City maintained services of repair and snowplowing on all the roads within the City limits whether they were public or private. The records of Calumet City do not show Forest Hills Drive going south.

William Hubbell, the street commissioner, when first appointed, was told by the mayor that Forest Hills Drive was a private roadway and would have to be dedicated. The defendant introduced a letter from Thomas R. Bobak, the city attorney, to the building commissioner dated July 2, 1970, in which Bobak took the position that the City of Calumet City had no interest in the dispute between the property owners of Forest Hills Drive for the reason that the road was a private roadway. Delivery men, salesmen, guests of the residents and spectators used the road, as did the school bus to pick up children.

At the time of the first sale to Chura in 1950, there was no roadway. The first use of the roadway was made by vehicles used in the construction of the Puszkiewicz home. The vehicles did not use any established route or particular section of the roadway and often got stuck. The roadway assumed its present physical characteristics within the last 10 years when the City began putting stone and asphalt on it. A sewer line was installed within the roadway after Chura's house was built.

Initially, it must be noted that we are concerned with the east 20 feet of Friedlander's lot, which did not, unlike those of the plaintiffs', contain a reservation for highway purposes; and it is that area over which the plaintiffs must prove an easement.

■■■ The essential elements which must exist to create an easement by implication on severance of ownership are that there must be a separation of title, that prior to separation the use which would give rise to an easement must have been so long continued and manifest as to show that the use was meant to be permanent, and that use of the claimed easement must be essential to the beneficial enjoyment of the land granted or retained. (*Carter v. Michel*, 403 Ill. 610, 617, 87 N.E.2d 759.) In describing the requirements of the last element, the Supreme Court has said: "In such cases it is not necessary that the claimed easement be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is reasonable and highly convenient and beneficial thereto." (*Deisenroth v. Dodge*, 7 Ill.2d 340, 346, 131 N.E.2d 17.) Mere convenience is not sufficient to establish the easement but it must be

"reasonably necessary" to the proper enjoyment of the estate. (*Traylor v. Parkinson*, 355 Ill. 476, 482, 189 N.E. 307.) All the facts and circumstances surrounding the sale must be considered to determine whether it was the actual intent of the parties that such an easement be created. *Frantz v. Collins*, 21 Ill.2d 446, 449, 173 N.E.2d 437.

■■ The undisputed evidence shows that at the time of the first sale to Chura, who had direct access to Michigan City Road, there was no roadway in existence, nor was there one in existence at the time of the sale to Puszkiewicz. Indeed, it was the vehicles used in the construction of Puszkiewiczs' home that established the present contours of the roadway. In all the cases cited by the plaintiffs, the use existed while the property was in common ownership. That necessary element is absent in this case.

■■ Puszkiewicz testified that hedges 4½ to 5 feet tall run through the front of his property for the entire 80 feet. A tree is located 9 or 10 feet south of the driveway beside the bushes; another tree is located to the north of the bushes. His bushes begin 4 or 5 feet south of his driveway and the defendants' bushes begin 9 feet south of his driveway; the defendants have none north of the driveway. He testified that the defendants' bushes do not obstruct him but make it difficult in turning. It is apparent that both Johnston and Puszkiewicz have approximately 40 feet in which to back up or turn without coming near the bushes of the defendants. There is parking space between Puszkiewiczs' driveway and the dead end. There is no evidence from which it could be inferred that the planter constituted any obstruction to traffic. The defendants' bushes had been planted several years before without objection by the plaintiffs. "Difficulty in turning" falls far short of the proof required to show that an easement is "reasonably necessary" to the enjoyment of the plaintiffs' estate. (See *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill.App.2d 454, 463, 220 N.E.2d 491.) For these reasons we conclude that the plaintiffs have failed to prove two essential elements necessary to establish an easement by implication.

■■ In support of their contention that the evidence supports a finding of easement by necessity, the plaintiffs cite *Finn v. Williams*, 376 Ill. 95, 33 N.E.2d 226. In that case the grantee had no access to a public highway except over the land of the grantor. In this case, not only do the plaintiffs have access to Michigan City Road by means of Forest Hills Drive from their driveways north, but, if they wish to avail themselves of a drive of some 50 odd feet south to a dead end, it can be accomplished quite easily by removing the obstructions placed by Puszkiewicz in the west 20 feet of his lot, which has been expressly reserved for highway purposes. Furthermore, Puszkiewicz bought the property immediately to the south and there now exists a road running from the southern edge

of his property south to 159th Street. Puszkiewicz testified that he built the road about 2½ years before, that it is wide enough to "accommodate an automobile cautiously," and that he has used it to reach his residence from 159th Street. Under this evidence we must conclude that the plaintiffs have failed to prove an easement by necessity.

■■ The plaintiff next argues, and the court found, that the road was a public highway since it had been used by the public for at least 15 years. Section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1969, ch. 121, sec. 2—202), includes in the definition of a highway "any public way for vehicular travel which has been  *  *  *  used by the public as a highway for 15 years,  *  *  *." To constitute a road as a highway under this section, there must be a user for a statutory period which is open, continuous and uninterrupted, and under a claim of right in the public. *People v. Waitkus*, 30 Ill.2d 335, 338, 196 N.E.2d 668.

■■ The plaintiffs place particular emphasis on the fact that the roadway was worked by Calumet City as a "strong indication that it is a public highway." First, the City did not work on the road south of the Puszkiewiczs' and Friedlanders' driveways. Second, the City maintained services of repair and snowplowing on all roads, private or public. Third, the City did not begin seal-coating until 1966. Last, although not controlling, the City officials regarded the road as a private one. Consequently, the fact that the City has done some work on the road is entitled to no weight. See *People ex rel. Porten v. Geske*, 119 Ill.App.2d 152, 255 N.E.2d 753.

■■ The mere fact that residents, visitors, and people serving the residents use the road did not satisfy the requirements necessary to establish public use. (*Harris v. Schwartz*, 351 Ill.App. 351, 355, 115 N.E.2d 345.) The characteristics of the road were such that travel over it would hardly constitute notice of a claim of right in the public generally. (*People v. Waitkus*, 30 Ill.2d 335 at page 338.) And finally, as was pointed out in *Miller Brothers Lumber Co. v. Mayfair Lumber Co.*, 4 Ill.App.3d 616, 279 N.E.2d 389, 392, the plaintiffs' own use of the reserved portion of their property is a "persuasive argument against their position that a public highway was created on the roadway.  *  *  * [I]t is unreasonable to urge that a highway by prescription has been created as to defendant's portion of the roadway, but apparently not as to that part owned by plaintiff[s]." We conclude therefore, that the plaintiffs failed to maintain their burden of proving that the roadway was a public highway under section 2—202.

■■ Finally, although the trial court found to the contrary, the plaintiffs contend that the proof established a common law dedication of the roadway, the requirements of which are: (1) an intent on the part of the owner to donate the land to public use; (2) acceptance by the

public; (3) clear, satisfactory and unequivocal proof of these facts. (*McCue v. Berge*, 385 Ill. 292, 52 N.E.2d 789.) The trial court's finding that the plaintiffs had failed to provide such proof was correct. However, for the reasons previously ascribed, we conclude that the court should have denied the prayer to enjoin the defendants from obstructing the road. Accordingly, the judgment of the circuit court is reversed.

Judgment reversed.

BURKE, P. J., and GOLDBERG, J., concur.