H. CECIL NEELY *et al.*, Plaintiffs-Appellees, *v.* LYNDELL COFFEY *et al.*, Defendants-Appellants.

Fifth District   No. 78-469

Opinion filed August 29, 1979.

Earl S. Hendricks, Jr., of Hendricks & Watt, of Murphysboro, for appellants.

Edward L. Choate, of Carterville, for appellees.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This matter involves a 31.5-foot by 469-foot strip of real estate in Williamson County located adjacent to and east of defendants' property and to the north of plaintiffs'. The Circuit Court of Williamson County entered a judgment granting plaintiffs a private easement by prescription and by implication on severance of the tenements over this strip of land. The court enjoined defendants from interfering with plaintiffs' use of the easement and also entered judgment on defendants' counterclaim, finding that the defendants owned the strip of land subject to plaintiffs' easement but that the placement of a sewer line under the strip by plaintiffs, Clarks, was a trespass. The court ruled that the proper remedy for the trespass was monetary damages to be determined as in eminent domain and awarded nominal damages of $10. Defendants appeal.

The nature of this case requires an understanding of the history of the ownership and use of the disputed strip and the surrounding real estate. The disputed strip is situated between the Coffey tract and the Finney tract and its northern terminus is a public road and the north line of the Northwest Quarter of the Northeast Quarter in Section 11, Township 9 South, Range 1 East of the Third Principal Meridian, Williamson County, Illinois. Troy Felts obtained title to this quarter-quarter in April of 1920. In 1921 he conveyed the tract now owned by defendants Coffeys to Herman Craig. In 1941 he conveyed the parcel now owned by James Finney to his son Rosco Felts. In 1945 he conveyed 33 acres lying south of the disputed strip to George and Reba Samuel, who in 1951 conveyed the same 33-acre tract to plaintiff Neely. This 33-acre tract was referred to in the record as "the farm" and Troy Felts' "farmland." In 1977 Neely conveyed the 5-acre parcel of this tract to plaintiffs, Clarks, along with an easement over a 31.5-foot-wide strip along the west line of that parcel. This easement strip is to the immediate south of the disputed strip of land. The Clarks subsequently constructed a sewer line to hook up to the Crainville sewer system, and part of that sewer line was constructed under the disputed strip. This disputed strip was never conveyed to anyone by Troy Felts. In 1977, the heirs of Troy Felts conveyed their fractional interests in and to the strip to the defendants by quitclaim deeds.

A public road runs east and west along the north line of the quarter-quarter section. Another public road runs north and south along the west line of the quarter-quarter section. These roads have been existing as public roads since the time that Troy Felts held title to all of the land involved in this dispute.

In 1931, the New Block Coal Company commenced a mining operation on Felts' property, at a site south and to the west of the disputed strip and on property now owned by defendants which is to the north of plaintiffs Neelys and adjacent and to the west of the 31.5-foot strip owned by Neely subject to Clarks' easement. This mining operation was conducted pursuant to a lease obtained from Felts for approximately 5 years.

A roadway was built over the disputed strip. The evidence is in conflict as to the exact date the road was made, by whom, and for what purpose. Defendants contend that the roadway was built in 1931 by the New Block Coal Company as an access road to its mine shaft. They claim a driveway 12 feet wide had been located over part of the disputed strip and it went to Rosco Felts', now Finney's, property.

Plaintiffs, however, offered evidence that a roadway had been constructed on the strip prior to the arrival of the New Block Coal

Company. Harry Chambers, an area resident since 1920 who was acquainted with the New Block Coal Company mining operation, identified the disputed strip as the location where the coal company built a new road over a former driveway. He said the mining company increased the width of the roadway from 12 feet to 30 feet using a base of slack and rock which came from the mine. Chambers stated that the pre-existing drive extended to the mine shaft site and the mine company built its new road beyond the mine shaft into two pasture fields owned by Troy Felts.

Clarence Tally testified that he was 78 years old and a son-in-law of Troy Felts. He said that he helped Troy Felts measure and stake off the road in question before the mine operations began, "somewhere in the 20's." He described the road as 30 feet wide, beginning at the hard road to the north and extending south to the end of the woods south of the mine shaft. When asked about Mr. Felts' purpose for the building of the road, Tally replied, "he fixed it so that they could have entrance to their homes if they wanted to build back there on them back lots." He testified that before the mine opened, the roadway was used by a Mr. Jack Chambers and by Mr. Felts.

Bruce Felts, a son of Troy Felts, also testified. He stated he did not recall the date the road was built; that he would have been very young at the time. It was his testimony, however, that his father and subsequent owners of the farm had used the road for the purpose of pursuing farming on the land.

"Q. Mr. Felts, was that road used for the beneficial purpose of the farm land also during that time?

A. I know that Dad used it.

\* \* \*

Q. [T]he knowledge that you have of the use of this road was for farm wagons and farm machinery and things of that nature to get in there to farm, right?

A. Right."

Regarding the use made of the disputed strip, there is evidence that Troy Felts made use of the road in order to drive farm equipment in and out from his farm land to the south prior to the 1931 arrival of New Block Coal Company. The road was used between the years of 1931 and 1936 by the New Block Coal Company in connection with its mine operation. Following the close of the mining operation, Troy Felts continued to use the roadway as a route for his farm equipment to enter and exit from his lands to the south.

The Neelys and their sharecropper have made use of the road since 1951 in order to get farm machinery in and out from the fields and as access for their entry on the fields to inspect crops. There was a good deal

of testimony that the roadway had also been used by the public in general for the purpose of dumping trash in the abandoned mine shaft, as a "lovers' lane," and as an access road to hunting locations.

There is no other existing roadway to the 5-acre tract now owned by plaintiffs Clarks nor to the remaining backfields of plaintiffs Neelys. Between Neelys' backfields and the north-south public road which is on the west line of the quarter-quarter section are a woods, a pond and a rough field.

The trial court found the strip had been used openly, notoriously, adversely, continually, and under claim of right by the successive title holders of the land surrounding the strip for a period of more than 30 years and, therefore, petitioners had a private easement by prescription over the strip of land for the benefit of the property they owned to the south of it. The court also found that when he owned the strip and all lands surrounding it, Troy Felts caused a roadway to be built upon the strip which was a burden upon the strip and which was used as a benefit for the surrounding lands he owned; that he deeded all those surrounding lands but never deeded the strip; that by the time he deeded those surrounding lands, the use of the strip as a roadway had been so long continued and manifest as to show that the use was meant to be permanent; that the use was and is essential to the beneficial enjoyment of the surrounding lands which were deeded by Troy Felts; and therefore, plaintiffs enjoyed an implied easement on severance of the tenements over the strip.

■ We affirm the trial court's finding that the disputed strip is owned by defendants subject to plaintiffs' easement. We cannot say that it was against the manifest weight of the evidence for the trial court to find that plaintiffs sufficiently established the requirements for an implied easement on severance of the tenements. The trial judge viewed the exhibits, listened to testimony of the witnesses and was able to observe those witnesses and weigh their credibility. We shall not disturb his findings unless they are manifestly against the weight of the evidence. *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424, 430.

■ ■ To establish the creation of an easement by implication on severance of the unity of ownership of an estate, one must prove separation of title, a long-continued and obvious use of the land in dispute before the separation, and necessity of the easement for the beneficial enjoyment of the land granted or retained. (*Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 148 N.E.2d 795, 797.) The record shows separation of title in 1945 when Troy Felts, who then owned the disputed strip and the 33-acre farm to the south, conveyed the farmland to George and Reba Samuel. Furthermore, by 1945 the use of the disputed strip by Felts and others to reach his farmlands was well established. We note that the strip of

land was surfaced with a substance of permanent and long-lasting nature and that Troy Felts, common owner of all the land in question here, conveyed all the land he owned in the Northwest Quarter of the Northeast Quarter of Section 11, except the strip in question. These two facts further buttress the permanent character and usage of the roadway. We believe that plaintiffs also showed the use of the roadway was essential to the beneficial enjoyment of their lands. From the record, it appears that this roadway was, and still is, the only access road to Clarks' property and the backfields of Neelys' farm. The woods, pond, and rough terrain between these backfields and the north-south public road to the west of Neelys' property augment the importance of the roadway to the enjoyment of the Neelys' farmland.

■■■ Our holding with respect to the issue of an implied easement on severance of tenements makes a discussion regarding evidence of a private easement by prescription unnecessary. Regarding the proper remedy for defendants involving Clarks' sewer line trespass under the land in question, we believe that the finding of a continuing trespass and the finding that defendants accepted this land with notice of this trespass to be supported by the record. Furthermore, the evidence shows Clarks' trespass was not willful. The mandatory injunction is a remedy used only with caution and in cases of great necessity. (*Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 311, 258 N.E.2d 811, 814.) Where an encroachment is slight and unintentional, where the cost of removing it great and the corresponding benefit to the owner small, it is not an abuse of judicial discretion to deny injunctive relief and to leave the complaining party to this remedy at law. (*Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 311, 258 N.E.2d 811, 814.) The trial court's decision as to the proper remedy is in harmony with *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 354 N.E.2d 353, in which the Illinois Supreme Court affirmed this court and held that a mandatory injunction is ordinarily inappropriate where an encroachment lies within a highway right of way. *Cammers* and the case at bar are analogous, and the theory that persons, such as our defendants, who have already lost the use of the surface of the strip in question will not be irreparably injured by such underground encroachments as Clarks' sewer line applies here to make a mandatory injunction an improper remedy. Finally, the absence of any evidence as to the amount of damages leaves us no choice but to affirm the court's award of $10.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

G. MORAN and KASSERMAN, JJ., concur.