MID-CITY NATIONAL BANK, as Trustee, Plaintiff-Appellant, v. C. A. HEMPHILL & ASSOCIATES *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 87—0710

Opinion filed October 21, 1987.

---

*Justice Rizzi recused himself after oral argument. Justice Freeman read the briefs and listened to the tapes.

Thomas W. Flannigan, of Chicago, for appellant.

Samuel H. Levine, of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:
This appeal arises out of the trial court's denial of plaintiff's motion for a preliminary injunction. Plaintiff sought, pursuant to an alleged implied easement, to restrain defendants from interfering with plaintiff's use of a driveway which runs in part over land owned by defendant Patricia Pell. After hearings on plaintiff's motion, the court

denied the motion and, upon defendant's oral motion for summary judgment and by agreement of the parties, entered a final judgment on the record established at the hearings.

On appeal plaintiff raises the following contentions: (1) an easement by implication and operation of law was established upon the 1977 severance of the ownership of the property; (2) plaintiff's access to Hazel Avenue, via a northern route from plaintiff's property, is immaterial to its rights in the alleged easement to Linden Avenue, accessible via a southern route from plaintiff's property over the land of defendant; (3) the rights of the owners of lot 1 (plaintiff's land) and lot 3 (defendant's land) *vis-a-vis* the implied easement over the subject driveway were fixed at the time of severance of the lots.

For the reasons stated below, we affirm the judgment of the circuit court of Cook County.

The evidence at trial indicated the following. Plaintiff Mid-City National Bank, as land trustee, is the legal owner of the property located at 390 Hazel Avenue, Highland Park, Illinois, which, for convenience, the parties have referred to as "Lot 1." Ralph Mantynband is the owner of the beneficial interest in the land trust, and has resided on lot 1 since 1984. From 1924 until 1977, Benedict and Irene Goodman owned the property which included lots 1 and 3. In 1977, title to the Goodman's property was separated and the land was subdivided into lots 1, 2, and 3. Lot 1 was conveyed to Mr. and Mrs. Berger. Plaintiff is the purchaser from the Bergers. Defendant Patricia Pell purchased lot 3 in 1986 from a grantee who intervened in the ownership of the property after the initial severance of lots 1 and 3.

Defendants Patricia Pell and Kenneth Pell are married. Patricia Pell is the owner of lot 3, which has the address of 1653 Linden Avenue, Highland Park, Illinois. Lot 3 is immediately adjacent to and south of lot 1, plaintiff's property. The Pells retained defendant C. A. Hemphill & Associates as a building contractor to build a house on lot 3. The house would be the first improvement on lot 3. Coincidentally, defendant Patricia Pell is the granddaughter of the original grantors of the land, Benedict and Irene Goodman.

The Pells have notified plaintiff that, upon completion of the construction of the house, they plan to remove the paved asphalt driveway on their property to reforest that area. It is over the driveway on lot 3 that plaintiff has claimed an easement. Currently, the driveway runs through both lots 1 and 3. Around December 1, 1986, the defendant contractor blocked the part of the driveway located on lot 3 by placing a portable outhouse and bales of hay in the driveway and placing a snow fence across the driveway. Defendant's actions prohib-

ited access over the driveway from Linden Avenue to lot 1, which is plaintiff's property.

The driveway on lot 1 has access in a northerly direction to Hazel Avenue, an east-west street that lies north of lot 1. The access to Hazel Avenue lies just east of the intersection with Linden Avenue, a north-south street that lies west of lots 1 and 3. The driveway runs from Hazel Avenue roughly parallel to Linden Avenue and enters lot 3 (the Pell property) south of lot 1's south lot line. The driveway runs through lot 3 in a southerly direction and then turns west to the western border of lot 3, where it accesses Linden Avenue. The driveway is about two car widths wide.

Several witnesses testified at trial regarding the use of lot 1 and the driveway. Witnesses included defendant Patricia Pell; Ralph Mantynband, the resident of lot 1; Penny Hirsch, a neighbor who lives nearby the subject property; and Michael Harper, an operations manager for North Shore Waste Control, a company that controls garbage pickup in Highland Park, including lot 1. Their testimony indicated the following.

The driveway in question has been in use since 1928. The driveway crosses a shallow ravine at the southern border of lot 1, where it is improved with a flagstone bridge, 10 feet wide and about 9 feet long. The southern part of the bridge is on lot 3 and the northern part, nearly the entire bridge, is located on lot 1. In order to reach Linden Avenue from the driveway on lot 1, a person must cross the bridge over the ravine. The entire driveway, including the part on lot 1 and the part on lot 3, was last paved in 1949.

The driveway extends about 200 feet from the front of the house and about 250 feet from the back of the house on lot 1 to the Hazel Avenue entrance. The distance to the rear of the house from the Linden Avenue exit is about 100 feet. Plaintiff points out that access from Linden Avenue to the rear of the house is without an incline up to the second-floor level, while access from the rear of the house (the garage) from the Hazel entrance requires movement down one story to the entrance and up one story back to the street.

Prior to December 1986 when defendants blocked it, the part of the driveway on lot 3 had been used to service the house on lot 1 for the entrance and exit to a smaller driveway and to a parking area. Additionally, that part of the driveway was used for removal of garbage and other services to the residence, including gas, electricity, and the fire alarm. The house on lot 1 is built on a hill that slopes south toward the ravine. The portion of the driveway and the bridge which are in question served the rear entrance, which is one full

story lower than the front entrance. The front entrance is located on the north side of lot 1. The part of the driveway that leads from Hazel Avenue passes both the front door and back door of the house on lot 1.

Mantynband testified that both he and his wife are able to use the Hazel driveway for access to their house. Mantynband admitted that the Hazel driveway affords reasonable ingress and egress to the street. Mantynband also stated that he can access the lower level of his house from Hazel Avenue, and that he has on prior occasions backed out of his property onto Hazel Avenue. The Hazel driveway is wide enough for cars to make three-point turns to exit via Hazel Avenue.

Patricia Pell testified that she had visited her grandmother, the former owner, Irene Goodman, at the house on lot 1 (now owned by plaintiff) prior to her grandmother's death in 1977. Patricia Pell stated that prior to 1977 the driveway generally was used by people entering from the Linden Avenue entrance and exiting on Hazel, or entering from Hazel and exiting on Linden. Patricia Pell also testified, however, that she had occasion during that time to back out of the driveway on lot 1 onto Hazel Avenue and that she saw other people doing the same. Mantynband also testified that he has seen people turn around in the driveway on lot 1 and then drive forward, out the Hazel access.

Penny Hirsch, who lived across the street, at 1676 Linden Avenue, testified that during the 23 years that she had been living there, the use of the driveway on lot 3 was continuous and that lot 1 regularly was served through use of the Linden Avenue entrance for deliveries and for access to the rear door and the main front entrance. Hirsch also testified, however, that she has backed out of the driveway on lot 1 onto Hazel Avenue and that she has seen others do the same. It was stipulated that, if called, her brother Allan Hirsch would have given substantially the same testimony.

Mantynband also testified that the driveway leading from Linden Avenue serviced the rear entrance to the house on lot 1. The evidence also indicated that the private scavenger services historically have used the rear, *i.e.*, the Linden Avenue, access. The electric and gas companies also used the Linden Avenue access. Deliveries were made through the rear entrance, and burglar and fire alarms have been serviced from the rear entrance, which is closer to the Linden Avenue access.

On cross-examination, however, Mantynband testified that he is able to have his house serviced from the entrance on Hazel Avenue.

Specifically, the people who handle the fire and burglar alarms can come in from Hazel Avenue to service the alarms. Commonwealth Edison also can come in from Hazel Avenue to read the electricity meter. Packages can be delivered from the Hazel Avenue driveway, and the Hazel Avenue driveway is where Mantynband's mailbox is located.

Michael Harper of North Shore Waste Control testified that, to his knowledge, his company always picked up garbage from the house on lot 1 through the Linden Avenue access. Harper stated that it is easier for the company to use the Linden driveway than the Hazel Avenue entrance, since the employees have a shorter walk, of around 100 feet, rather than a distance of more than 200 feet from Hazel Avenue. Harper stated, however, that the company is able to collect refuse via the Hazel Avenue entrance, and that the cost of their service would be the same regardless of whether the Linden or Hazel Avenue entrance was used.

After hearings were concluded, the trial court found that the record fell short of establishing an easement by implication over the driveway on lot 3. The court found that plaintiff had shown the first two elements of an implied easement, namely, (1) that there had been a separation of title between lots 1 and 3 in 1977, and (2) that before separation the use of the driveway was long, continued, obvious and manifest to a degree which shows permanency. The court found, however, that plaintiff had failed to establish the required third element, that is, that the use of the driveway on lot 3 was essential to the beneficial enjoyment of plaintiff's dominant estate, lot 1. Based on its findings, the trial court entered judgment in favor of defendants.

## I

On appeal plaintiff initially contends that an easement by implication and operation of law was established upon the 1977 severance of ownership. Plaintiff asserts that defendant Patricia Pell knew of the convenience of entering lot 1 from Linden Avenue since she had visited her grandmother on the premises long before any subdivision of lots 1 and 3. Further, plaintiff notes that the driveway and bridge were the subject matter of an affidavit filed with the recorder of deeds more than a year before defendant purchased the property. Plaintiff contends that defendant Patricia Pell acquired title to lot 3 fully aware of the open and visible character of the driveway and bridge.

Plaintiff further asserts that at the time of severance the driveway was in use, that it had been in continuous use before the severance, and that it has been in continuous use since the severance. Ad-

ditionally, plaintiff contends that when plaintiff's predecessors in title, the Bergers, acquired lot 1, they acquired it with the benefit and burden of the use of the driveway across lot 3. Plaintiff asserts that defendant Patricia Pell's predecessors in title took their property subject to the same benefit and burden. *Martin v. Murphy* (1906), 221 Ill. 632, 77 N.E. 1126; *Cassidy v. Cassidy* (1923), 309 Ill. 465, 141 N.E. 149.

Plaintiff also cites *Koubenec v. Moore* (1948), 399 Ill. 620, 78 N.E.2d 234, in which the court found an implied easement where a driveway had been in use by the owner of the dominant estate for 40 years prior to the subdivision of the contiguous property. The *Koubenec* court stated that where the owner of an entire estate has arranged it so that one portion of it derives a benefit of a permanent nature, and then sells that portion, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of sale that belong to it. (399 Ill. 620, 615, 78 N.E.2d 234, 237.) *Koubenec* also held that in order to find an easement under such circumstances, it was not necessary that the easement "be really necessary for the enjoyment of the estate granted. It is merely sufficient if it is highly convenient and beneficial to the estate granted." (399 Ill. 620, 625, 78 N.E.2d 234, 237.) Plaintiff also cites *Carter v. Michel* (1949), 403 Ill. 610, 87 N.E.2d 759.

In response defendants assert that the trial court's determination that plaintiff failed to establish an easement by implication is supported by the evidence. (*Deisenroth v. Dodge* (1955), 7 Ill. 2d 340; *Neely v. Coffey* (1979), 76 Ill. App. 3d 37, 394 N.E.2d 766, *aff'd* (1980), 81 Ill. 2d 439.) Defendants correctly point out that the party claiming an easement by implication has the burden of showing facts necessary to create the easement (*Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 446 N.E.2d 904), and that such facts must be shown by clear and convincing evidence (*Sheehan v. Sagona* (1958), 13 Ill. 2d 341).

■ We hold that the trial court's finding that plaintiff failed to establish an easement by implication was not against the manifest weight of the evidence. (*Neely v. Coffey* (1979), 76 Ill. App. 3d 37, 394 N.E.2d 766, *aff'd* (1980), 81 Ill. 2d 439; *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424). Further, plaintiff failed to prove the elements of an easement by clear and convincing evidence. *Sheehan v. Sagona* (1958), 13 Ill. 2d 341; *Rexroat v. Thorell* (1982), 89 Ill. 2d 221, 229, *cert. denied* (1982), 459 U.S. 837, 74 L. Ed. 2d 79, 103 S. Ct. 83, *rehearing denied* (1982), 459 U.S. 1059, 74 L. Ed. 2d 625, 103 S. Ct. 478.

Plaintiff claims that the convenience of the driveway has been shown through its continued and open use. We find, however, that the trial court's holding that plaintiff failed to show that the use of the driveway was necessary to the beneficial enjoyment of lot 1 is supported by the evidence, especially in light of the fact that another reasonable access to the front and rear of the house, via Hazel Avenue, was available to anyone entering plaintiff's land. *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 271; *O'Hara v. Chicago Title & Trust Co.* (1983), 115 Ill. App. 3d 309, 450 N.E.2d 1183.

## II

Second, plaintiff contends that its access to Hazel Avenue is immaterial to its rights in the easement to Linden Avenue. Plaintiff cites *Deisenroth v. Dodge* (1955), 7 Ill. 2d 340, in which the court found an easement by implication where the roadway in question "was apparent and obvious, permanent, and subject to continuous and actual use up to the time of severance of unity of ownership." (7 Ill. 2d 340, 346.) Plaintiff also relies on *Cosmopolitan National Bank v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 471, in which the court enforced an easement by implication where it found that a driveway was highly convenient for trucks, in making deliveries, to avoid another entrance on the street and to use the back doors rather than the front doors to the premises. Further, plaintiff cites *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, in which an easement by implication was found where the plaintiffs showed that the use of a driveway along the line which divides the property of the plaintiffs from the defendants' property was intended to be permanent.

Defendants respond that the trial court applied the correct legal standard in finding that plaintiff failed to establish an easement by implication on defendant's lot. The court properly stated that mere inconvenience is insufficient to establish an easement by implication. (*Fels v. Arends* (1927), 328 Ill. 38, 159 N.E. 244; *Puszkiewicz v. Friedlander* (1973), 12 Ill. App. 3d 1017, 299 N.E.2d 400.) Defendants assert that the trial court properly considered the following factors in finding that plaintiff failed to show more than mere inconvenience: plaintiff's beneficiary has more than reasonable access to his house from the entrance off Hazel Avenue; utility services can be maintained at the rear of the house; garbage servicemen can pick up garbage from the Hazel Avenue entrance at the same cost as picking it up from the Linden Avenue access; the distance from the driveway to the rear entrance of the house, by way of the flagstone walkway, was the same whether the Linden or Hazel access was used.

■ Additionally, defendants correctly note that Illinois courts have held that wherever available alternatives affording reasonable means of ingress and egress are present, easements by implication should not be sanctioned. *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267; *Wetmore v. Ladies of Loretto, Wheaton* (1966), 73 Ill. App. 2d 454, 220 N.E.2d 491; *Miller Brothers Lumber Co. v. Mayfair Lumber Co.* (1972), 4 Ill. App. 3d 616, 279 N.E.2d 389; *Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 446 N.E.2d 904.

In *Wetmore v. Ladies of Loretto, Wheaton* (1966), 73 Ill. App. 2d 454, 220 N.E.2d 491, the court refused to find an easement by implication where an alternate means of access to the property was available that did not require passage over the land of the servient estate, even though the easement claimant would be required to travel about twice as far to reach a public road from one direction. (73 Ill. App. 2d 454, 463, 220 N.E.2d 491, 495.) In *Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 446 N.E.2d 904, the court found no implied easement in favor of the plaintiffs across the defendant's neighboring land where the evidence showed that the quarry road used by the plaintiffs for access to their land was a viable alternative. The evidence showed the road was accessible year-round and passable except during the infrequent flooding.

In *Miller Brothers Lumber Co. v. Mayfair Lumber Co.* (1972), 4 Ill. App. 3d 616, 279 N.E.2d 389, the plaintiff sought to enjoin the defendant from interfering with the plaintiff's use of a roadway which provided an entrance to the plaintiff's property. The plaintiff claimed an easement by implication in the roadway. The appellate court affirmed the trial court's denial of the existence of an easement. The court found no easement existed despite an extra distance of one to two city blocks the employees and customers of the plaintiff were required to travel to gain access to the plaintiff's property and the fact that the customers and employees generally had reached the property by way of the subject entrance.

Defendants assert that in the instant case Mantynband's regular use of the Linden Avenue access to service the rear of the house, and the extra distance he is required to travel to reach his back door in using the Hazel Avenue entrance rather than the Linden Avenue access, fails to establish that his use of the driveway on lot 3 rises to the level of high convenience necessary to the enjoyment of his property. Nor does the additional necessity of his backing out of the Hazel driveway or turning around and driving forward out of the driveway establish the high convenience necessary to establish an easement by implication. (*Poszkiewicz v. Friedlander* (1973), 12 Ill. App. 3d 1017,

299 N.E.2d 400.) Further, the additional fact that without the use of the Linden Avenue access, it would be more difficult for Mantynband to keep a gate locked and his dog secure on his land fails to establish the high convenience contemplated by the courts.

Defendants also distinguish the cases relied on by plaintiff. In *Deisenroth v. Dodge* (1955), 7 Ill. 2d 340, there was no alternate outlet available on the plaintiff's lot, and without the imposition of an easement, the plaintiff would be required to build an access to the public road. In *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, the only way in which vehicles could conveniently and beneficially serve the plaintiff's property without remaining parked on the public street or the property of others was by using the easement. The use of the claimed easement also was highly convenient and beneficial since the alternate access to the garage on the servient estate was via a circuitous route over an unused, unimproved alley. Finally, defendants distinguish *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, in which there was no other means of access other than by way of the claimed easement, and the claimed easement was necessary for the productive farming of the claimant's lot.

■ In reply, plaintiff initially contends that defendants fail to distinguish easements by way of necessity from easements by implication of law. A way of necessity is created where, upon severance, a parcel of land is left without access to a public road and is surrounded by the properties of strangers or the remaining lands of the grantor. Implied easements arise where two grantees take parcels of land, one of which is burdened by an existing easement. *Evanik v. Janus* (1983), 120 Ill. App. 3d 475, 458 N.E.2d 962.

Plaintiff asserts that the cases relied on by defendants are factually distinct from the instant case. Plaintiff contends that in the instant case, it is manifest from the way the property was arranged that the parties intended the driveway to be permanent. (*Frantz v. Collins* (1961), 21 Ill. 2d 446.) Plaintiff notes that none of the three initial succeeding grantees of title to lot 3 after the initial severance had ever disputed the use of the driveway.

■ We hold that the trial court properly considered plaintiff's access to Hazel Avenue in determining that plaintiff failed to establish an implied easement over the driveway on lot 3. Plaintiff failed to show by clear and convincing evidence that the use of the driveway on lot 3 was sufficiently necessary to the beneficial enjoyment of his land. The trial court recognized and we acknowledge that access to Linden Avenue via the driveway over defendant's land was convenient and that the Linden access had been used for a continued time. How-

ever, the evidence indicated that plaintiff, his wife, and all of the people who provide regular services, including garbage pick-up, mail delivery, electricity and gas services, burglar and fire alarm services, and other deliveries, are able to use the Hazel Avenue entrance without incurring unreasonable inconvenience or additional cost. Without the use of the Linden Avenue entrance, plaintiff and others entering the property may have to travel a slightly longer distance, and will be required to turn around in the driveway rather than driving straight through to the Linden exit. Nevertheless, the Hazel Avenue entrance provides fairly easy access to the front and rear of plaintiff's house. Therefore, the trial court's finding that the third element was not established is supported by the manifest weight of the evidence and will not be disturbed.

■■ We find that the trial court applied the proper standard for determining whether an implied easement existed, that is, whether the easement is reasonable, highly convenient and beneficial to the dominant estate. (*Swieton v. Landoch* (1982), 106 Ill. App. 3d 292, 435 N.E.2d 1153.) Nor, as plaintiff suggests, did defendant improperly rely on legal authority that was limited strictly to ways of necessity, as opposed to easements implied by operation of law. The determination of the requirement of necessity regarding the beneficial ownership of property must turn on the particular facts of each case. (*Wetmore v. Ladies of Loretto, Wheaton* (1966), 73 Ill. App. 2d 454, 220 N.E.2d 491.) The facts of the instant case indicate that the driveway over defendant's land was not reasonably necessary to plaintiff's beneficial ownership of lot 1. Further, we note that implying an easement in favor of plaintiff would have placed an undue burden on defendants, who reasonably seek to improve their land.

### III

Finally, plaintiff maintains that the rights of the owners of lots 1 and 3 *vis-a-vis* the implied easement over the driveway were fixed at the time of severance of the lots and that whatever rights plaintiff has by way of the implied easement are derived from the chain of title beginning with the first division of the property in 1977, when lot 1 was sold to the Bergers. Further, plaintiff asserts that those rights have been neither enhanced nor diminished since 1977.

Plaintiff contends that the trial court misapprehended the point in time when the easement was fixed and created. The court, plaintiff asserts, erroneously determined to extinguish the rights of lot 1, the dominant estate, based on defendant Patricia Pell's wish to make a use of lot 3 that is different from the use that existed at the time of

severance. Plaintiff cites *Martin v. Murphy* (1906), 221 Ill. 632, 77 N.E. 1126, which provides that at the moment of severance by the sale of a part of an estate, easements are created corresponding to the benefits and burdens mutually existing at the time of the sale.

Further, plaintiff asserts that there are no recorded or unrecorded documents in existence which purport to terminate or diminish the easement, and that the property was arranged at the time of severance exactly as it now is arranged. Plaintiff cites *Fossum v. Stark* (1922), 302 Ill. 99, 134 N.E. 12, for the proposition that an easement by implication arises at the time of severance, where it may be presumed that the owner desired to preserve servitudes which were of a permanent nature, notorious or plainly visible. Plaintiff contends that the evidence in this case establishes that lot 3 was burdened with the claimed implied easement and that defendants have interfered with that easement.

In response, defendants assert that plaintiff was not entitled to an easement by implication at the time of severance of title. Further, defendants contend that plaintiff's recording of a self-serving document claiming an easement (apparently the document filed in the recorder of deeds office) does not automatically entitle plaintiff to an easement. Defendants note that the trial court found that plaintiff failed to show that the driveway was necessary to the enjoyment of lot 1, and assert that an easement by implication was not created in 1977 or 1986. In making its finding, the trial court considered that lot 3 was unimproved until defendants began construction of the house shortly after Patricia Pell purchased the land in 1986. Further, the court asserted that prior to severance, at the time that the original owners held both lots 1 and 3, the driveway was a natural and logical design since the whole property was so large. Finally, defendants assert that the record fails to contain any detailed testimony regarding the use of the Linden Avenue driveway from 1977 until plaintiff's purchase of lot 1 in 1984.

■■■ We hold that the trial court's finding that the claimed easement was not created at the time of severance is supported by the manifest weight of the evidence. In determining whether an easement has been created, courts look to the benefits and burdens mutually existing at the time of the sale of the property (*Martin v. Murphy* (1906), 221 Ill. 632, 77 N.E. 1126), that is, when severance of title occurs (*Walker v. Witt* (1954), 4 Ill. 2d 16, 20). Plaintiff brought evidence to show that the driveway was regularly used to access Linden Avenue at and prior to the time of severance. However, plaintiff failed to show that the use of the driveway over lot 3 was intended to be

permanent. Nor has plaintiff shown that his use of the driveway over lot 3 is so highly convenient that the law will imply an easement. Since plaintiff has failed to establish that the use of the driveway is reasonably necessary to his enjoyment of lot 1, his claim that an implied easement exists must fail. *Walker v. Witt* (1954), 4 Ill. 2d 16, 21.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P.J., and RIZZI, J., concur.